**MORSCHES LUMBER, INC.,**
**Defendant-Appellant,**

v.

**Walter F. PROBST, Plaintiff-Appellee.**

**No. 3–176A13.**

Court of Appeals of Indiana,
Third District.

April 12, 1979.

Benton E. Gates, Sr., James R. Heuer, Gates & Gates, Columbia City, for defendant-appellant.

Douglas E. Miller, Gary J. Rickner, Barrett, Barrett & McNagny, Fort Wayne, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellee Probst brought an action alleging that the negligence of Morsches Lumber, Inc. (Morsches) in its construction of a cattle pole barn built for Probst resulted in the barn's destruction during a windstorm. The trial court found Morsches had been negligent in the manner in which it built the barn, and that this negligence was the proximate cause of the barn's destruction.

Morsches presents several grounds for reversal, one of which is persuasive. The construction agreement called for Probst to carry fire and windstorm insurance and for Morsches to carry compensation and liability insurance. Probst collected on his policy which covered only about 75% of his loss. While not fully argued nor supported by ample authority, it appears to be Morsches' position that under the construction contract, the parties had agreed that the insurance obtained was to be for their mutual benefit. Therefore, Morsches argues that neither Probst nor his insurer as subrogee may bring an action for a loss which was agreed by the parties to be allocated to an insurer.

There is no evidence here that the policy named anyone other than Probst as the insured. Moreover, in view of our decision herein, we need not decide whether the trial court's finding of negligence on Morsches'

part should be overturned. We are faced with the question of whether an agreement to provide insurance constitutes an agreement to limit the recourse of the party acquiring the policy solely to its proceeds even though the loss may be caused by the negligence of the other party to the agreement.

In *Woodruff v. Wilson Oil Co., Inc.* (1978), Ind.App., 382 N.E.2d 1009, we considered a lessee's argument that any liability it might have for negligence was offset by the lessor's breach of its agreement to provide, and limit its compensation to, insurance. In that case, the lease agreement required the lessor to provide fire insurance. Because a lessor may always carry insurance for its own benefit, we determined that this clause would be surplusage unless construed as being for the lessee's benefit.

The issue in *Woodruff* had been framed in terms of breach of contract and we did not need to consider a line of foreign authority holding that agreements to insure amount to agreements to exculpate a party from the consequences of his own negligence, or to limit compensation to insurance proceeds. *E. g., General Mills v. Goldman* (8th Cir. 1950), 184 F.2d 359; *City of Deland v. Dri-Clime Lamp Corp.* (Fla.App. 1977), 348 So.2d 1239; *Cerny-Pickas & Co. v. C. R. Jahn Co.* (1955), 7 Ill.2d 393, 131 N.E.2d 100; *Rock Springs Realty, Inc. v. Waid* (Mo.1965), 392 S.W.2d 270; *Liability for Loss by Fire Among Insurer, Landlord and Tenant,* 18 Ohio State L.J. 43 (1957). Briefly stated, these cases hold that where the lessor agrees to insure against fire, and the lessee is to redeliver the premises in the same condition as when he acquired them, except for ordinary wear and tear and loss by fire, the lessor may not bring an action for loss caused by the lessee's negligence. Several of these opinions have pointed out additionally that rent payments constitute indirect insurance premium payments and, therefore, since the lessee pays for the insurance he must be deemed a beneficiary of it.[1]

---

1. "Where it is clear that the parties contemplate insurance to be paid for by the lessor it is logical to conclude that they intend the lessee to pay for the insurance through rent payment." 392 S.W.2d 270, 278.

In the context of commercial and construction contracts, clauses imposing upon one party the duty to provide insurance have been similarly construed to benefit both parties. Although one of the earliest cases, *Newport News Shipbuilding & Dry Dock Co. v. U. S.* (4th Cir. 1929), 34 F.2d 100, mentioned the fact of indirect payment of insurance premiums as part of the construction costs, the opinion focused on the fact that either party could have insured the undertaking of the contract. As in *Woodruff,* if the parties had intended that the insurance would protect only the insuring party from loss, whether the cause was purely accidental or of negligent origin, they would not have inserted an insurance clause in the contract. The presence of the clause would be surplusage unless it was intended to alter the position of the parties.

Recent cases have followed the reasoning in *Newport News.* The following language from *General Cigar Co. v. Lancaster Leaf Tobacco Co.* (D.Md.1971), 323 F.Supp. 931, 941 sums up the trend in this area:

". . . [W]here parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party."

Or, as stated in *Hearst Magazines v. Cuneo Eastern Press Inc. of Pa.* (E.D.Pa.1968), 293 F.Supp. 824, 829, there is a

". . . recent line of cases holding that in commercial agreements between two business concerns a provision that one will maintain insurance against certain risks indicates an intention to grant immunity to the other from liability, even though loss is caused by the negligence of the other."

Moreover, this logic has been applied to a situation in which one of the parties was a business concern and the other was an individual home buyer. *Weems v. Nanticoke Homes, Inc.,* 37 Md.App. 544, 378 A.2d 190.

These opinions have not been without dissents, nor do they represent a unanimous result reached by all jurisdictions considering the question. A few jurisdictions refuse to find an intention to exonerate a party from his own negligence in the absence of an express stipulation to that effect. *E. g., Sears, Roebuck & Co. v. Poling* (1957), 248 Iowa 582, 81 N.W.2d 462; *Winkler v. Appalachian Amusement Co.* (1953), 238 N.C. 589, 79 S.E.2d 185; *Wichita City Lines, Inc. v. Puckett* (1956), 156 Tex. 456, 295 S.W.2d 894.[2] As such, they are in line with our own treatment of indemnity clauses. *See Indiana State Highway Commission v. Thomas* (1976), Ind.App., 346 N.E.2d 252. We are also aware that except for *Hearst Magazines, supra,* all the cases cited which found the agreement covered negligence involved loss by fire, a cause which unlike a windstorm, is more likely to be of negligent than "accidental" origin. In addition, in several of these cases the complexity of the undertaking made loss by negligence a "fully appreciated and guarded against fire risk." (*General Mills v. Goldman, supra,* at 364), whereas in the instant case, the undertaking was apparently so simple that no plans, drawings or specifications were ever made.

However, we do not believe that the relative foreseeability of the actual cause of the loss should be determinate of whether the parties intended to insure against it. Rather it appears to us that where neither party has a legal duty to insure but each foresees the potential of a loss occurring by negligence or accident, the reasonable expectation of both in expressly imposing the duty

---

**2.** However, *see Tillerson v. Highrabedian* (Tex. Civ.App.1973), 503 S.W.2d 398, where a written contract providing the builder was to obtain builder's risk insurance was subsequently modified by an oral agreement that the owner

would get the insurance. The failure of the latter to name the builder as a co-insured defeated a subrogation action against the builder, and entitled him to the proceeds of the insurance up to the extent of his loss.

to insure against the loss upon one of them is that the other will be protected as fully as if he had assumed the duty himself. There is no need to apply to such agreements the standard applied to indemnity agreements. With agreements to insure, the risk of loss is not intended to be shifted to one of the parties; it is intended to be shifted to an insurance company in return for a premium payment. Neither party intends to assume a potential liability; rather both are demonstrating "normal" business foresight in avoiding liability and allocating it to an insurer. *Mayfair Fabrics v. Henley* (1967), 97 N.J.Super. 116, 234 A.2d 503. There is, therefore, no need to find an intent to assume liability as there is in indemnity cases.

Thus, we believe the better reasoning is found in those cases holding that an agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a party to a contract agrees as part of his or its duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts). If that were not their intent, each would provide his or its own insurance protection and there would be no need for the contract to place the duty on one of them.

Probst, therefore, is limited in his recovery to the proceeds of the insurance policy. The fact that he failed to take out a policy sufficient to cover the cost of the undertaking is a cost he will have to bear.

In view of our decision, Probst's request for exemplary damages cannot be considered.

The decision is reversed.

HOFFMAN, J., concurs.

STATON, J., concurs and files separate opinion.

STATON, Judge, concurring.

I concur with the majority opinion. It should be noted that the pole building was not completed at the time of the windstorm damage. The insurance policy here was a builder's risk policy. *Compare Aetna Cas. & Sur. Co. v. Katz* (1978), Ind.App., 377 N.E.2d 678; *also see* Later Case Service, 94 A.L.R.2d 264.