LeMASTER STEEL ERECTORS, INC., Appellant,

v.

RELIANCE INSURANCE COMPANY, et al., Appellees.

No. 20A04–8711–CV–339.

Court of Appeals of Indiana, Fourth District.

Nov. 20, 1989.

---

John E. Doran, Don G. Blackmond, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for appellees.

MILLER, Judge.

Subcontractor LeMaster Steel Erectors (LeMaster) pursuant to a contract with general contractor, Mid–States Construction Company, Inc. (Mid–States) was doing structural steel work on an addition to an existing building owned by Gladiator Van Conversions (Gladiator) when one of LeMaster's employees allegedly caused a fire which destroyed both the addition and the existing building. In accordance with their insurance policies, Reliance Insurance Company (Reliance) paid for the damage to the addition and the contents of the existing building and State Automobile Insurance Company (State Automobile) paid for damage to the existing building. Then both filed this subrogation action against subcontractor LeMaster and contractor Mid–States. During a summary judgment proceeding against Reliance,[1] LeMaster and Mid–States asserted they were insured under Reliance's builder's risk endorsement, and therefore Reliance was not entitled to subrogate. The trial court found that Mid–States was an intended insured under Reliance's builder's risk endorsement and that LeMaster was not an insured. (However, the trial court also denied summary judgment to Mid–States because it concluded that the builder's risk endorsement covered only the addition, not the existing building.) LeMaster brings this interlocutory appeal challenging the trial court's denial of its motion for summary judgment.[2]

We affirm.

### FACTS

In 1983, Mid–States, a general contractor, contracted with Gladiator to construct an addition to an existing building[3] used for spray-painting van components. The

Edward N. Kalamaros, Michael J. Anderson, Timothy J. Walsh, South Bend, for appellant.

1. Neither Mid–States nor LeMaster filed for summary judgment against State Automobile, which is not a party to this appeal.

2. Mid–States did not appeal.

3. The existing building was owned by Gladiator and leased to Dusterfield, Inc. Gladiator and Dusterfield are wholly owned subsidiaries of Glaval, Inc.

contract called for Mid–States to erect a pre-engineered metal building which was to be attached to the existing building. One of the walls of the existing building was to be removed and reused as the end wall of the addition. The Mid–States/Gladiator contract contained the following agreement:

"Contractor to furnish Public Liability and Workers' Compensation Insurance. All Risk Builder's Risk Insurance furnished by Owner with copy of same sent directly to Contractor prior to start of any construction. Any deductible will be paid by Owner."

Glaval, Inc., a holding company, which owns Gladiator, insured a number of properties owned or operated by Glaval or its subsidiaries under a comprehensive insurance policy carried by Reliance. Under this policy, Reliance insured the contents of the existing building in the amount of $150,000. However, the building itself was insured by State Automobile Insurance in the amount of $141,000. Pursuant to the contract between Gladiator and Mid–States, Glaval added a builder's risk endorsement to the comprehensive policy in the amount of $500,000.

Mid–States sub-contracted with LeMaster to do the structural steel placement on the project. The contract between Mid–States and LeMaster incorporated by reference the contract between Mid–States and Gladiator. LeMaster agreed to carry:

a. Statutory Workmen's Compensation and Occupational Disease Insurance including employer's liability $100,000.00 limit.
b. Broad form Contractor's liability insurance with bodily injury limits of at least $500,000.00 for each occurrence and property damage limits of at least $100,-000.00 for each occurrence.

LeMaster also agreed:

Subcontractor will indemnify and hold the owner and the Contractor harmless against all claims, damages (including consequential and incidental damages), judgments, awards, or losses, including attorneys' fees and costs of defense of whatever kind or nature arising out of any failure of the Subcontractor to perform any of its obligations under this subcontract, or which are directly or indirectly caused or contributed by any act of negligence or omission by the Subcontractor or anyone acting under him. The Subcontractor will upon request and at its own expense defend any action, suit or proceeding arising hereunder, and shall reimburse and pay the owner and/or Contractor for any loss, cost, damage or expense (including attorneys' fees) suffered by it hereunder.

Preparatory to attaching the pre-engineered addition to the existing building, an employee of LeMaster used a cutting torch to notch a beam adjacent to the existing building. Sparks from the torch allegedly ignited the fumes from the spray-painting operation, causing an explosion which destroyed the existing building and its contents and damaged the new construction.

Reliance paid its $150,000.00 limit under the contents coverage of the comprehensive policy and an additional $126,530.35 for inventory and stock in the existing building. It also paid for the damage to the addition under the builder's risk endorsement. State Automobile paid its $141,000 limits on the existing building. Reliance and State Automobile then filed this subrogation action against Mid–States and LeMaster.

Additional facts will be given when relevant to our opinion.

## ISSUES

LeMaster raises four issues. We need only discuss the following two issues:[4]

1. Whether, as a matter of law, LeMaster was an insured or an intended insured under Reliance's builder's risk endorsement.[5]

---

**4.** LeMaster also argues the builder's risk insurance called for in the contract between Mid–States and Gladiator was as a matter of law intended to cover the existing building and its contents. Because of our disposition of issue I, we need not address this issue.

**5.** We have consolidated and rephrased LeMaster's issues 1 and 3 into this issue.

2. Whether LeMaster was entitled to partial summary judgment that Reliance was not entitled to subrogation on a payment of $126,530 in excess of the personal property limit, because it was a mere volunteer.

## DECISION

LeMaster filed a motion to dismiss for failure to state a claim upon which relief can be granted, Ind. Rules of Procedure, Trial Rule 12(B)(6) or in the alternative a motion for full or partial summary judgment. Ind. Rules of Procedure, Trial Rule 56. Because the trial court considered matters outside the pleadings, the motion was treated as one for summary judgment. T.R. 12(B). A denial of a motion for summary judgment is generally not an appealable interlocutory order, however when the defendant raises defenses which would if applicable, entitle it to judgment as a matter of law, and the trial court certifies one of the provisions of Ind. Rules of Procedure, Appellate Rule 4(B)(6) is applicable, an interlocutory appeal is permitted. *Standard Mutual Insurance Co. v. Boyd* (1983), Ind.App., 452 N.E.2d 1074. Here, the trial court certified the order involved a substantial question of law, the determination of which would promote a more orderly disposition of the case, A.R. 4(B)(6)(b) and this court granted the petition for interlocutory appeal.

LeMaster argued it was an intended insured under the Mid–States/Gladiator contract and/or an insured under the provisions of Reliance's policy. Reliance contended that LeMaster was not an insured, and even if it were an intended insured under the builder's risk endorsement, the endorsement covered only the addition, not the existing building or its contents. In its order denying summary judgment, the trial court concluded that Lemaster was not an insured under the builder's risk endorsement. It also concluded that Mid–States was an intended insured under the endorsement,[6] but that summary judgment was

inappropriate because the endorsement covered only the addition.

### I. *Was LeMaster an Intended Insured Under Reliance's Builder's Risk Policy*

Generally, an insurer is not entitled to subrogate against one whose interests are insured by the policy. *South Tippecanoe School Building Corp. v. Shambaugh & Son* (1979), 182 Ind.App. 350, 395 N.E.2d 320. LeMaster argues it was an insured under Reliance's builder's risk policy, claiming (1) it was an intended insured under the provisions of the Mid–States/Gladiator contract because the parties intended to shift the risk of all construction accidents involving damage to the work itself to insurance, even if such damage was caused by the negligence of a subcontractor, and (2) it was an insured under the terms of Reliance's builder's risk policy.

LeMaster cites *South Tippecanoe, supra* and *Morsches Lumber, Inc. v. Probst* (1979), 180 Ind.App. 202, 388 N.E.2d 284 in support of its claim it was an intended insured under the provisions of the Mid–States/Gladiator contract. In *Morsches,* contractor Morsches constructed a pole barn for Probst which was destroyed by a windstorm during construction. The construction agreement provided that Probst would carry fire and windstorm insurance and Morsches would carry compensation and liability insurance. Probst did purchase a builder's risk policy however, its limits only covered 75% of the loss. Probst sued Morsches for the amount of his damages not covered by insurance, alleging negligent construction. This court, in holding Probst was limited in his recovery to the insurance proceeds, stated:

[A]n agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a party to a contract agrees as part of his or its duties to provide insurance, that the insurance will

---

6. LeMaster also argued the trial court erred in concluding the builder's risk policy did not include the existing building. Because we con-clude LeMaster was not an insured, we need not reach this issue.

protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts). If that were not their intent, each would provide his or its own insurance protection and there would be no need for the contract to place the duty on one of them.

*Id.* 388 N.E.2d at 287.

Although *Morsches* did not address the rights of a subrogated insurer, such rights can rise no higher than the rights of the insured. *Hockelburg v. Farm Bureau Insurance Co.* (1980), Ind.App., 407 N.E.2d 1160. In effect, a party who agrees to purchase insurance for the benefit of another party, becomes that party's insurer to the extent of the agreement to purchase insurance. *Midwest Lumber Co. v. Dwight R. Nelson Construction Co.* (1972), 188 Neb. 308, 196 N.W.2d 377. In addition, the party, by agreeing to purchase insurance for the benefit of both parties, has agreed to waive the other party's liability. *Morsches, supra.* Therefore, because the party who agreed to purchase insurance has no cause of action against the party for whose benefit the insurance was to be purchased, the first party's insurance company also has no cause of action.

However, *Morsches* is not dispositive of this case, as it concerned only the rights of the parties to the contract. *Morsches* merely supports the trial court's conclusion that Mid–States was an intended insured under the builder's risk policy.

LeMaster also cites *South Tippecanoe, supra,* in which the court held that various subcontractors and an architect were intended insureds under a construction contract between a general contractor and the school corporation. However, the contract in *South Tippecanoe* was far more explicit in defining subcontractor's rights than the Mid–States/Glaval contract. The *South Tippecanoe* contract contained the following provisions:

11.3.1 Unless otherwise provided, the Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. *This insurance shall include the interests of the Owner, the contractor, Subcontractor and sub-subcontractors in the Work* and shall insure against the peril of Fire, Extended Coverage, Vandalism and Malicious Mischief.

\*　　\*　　\*　　\*　　\*　　\*

11.3.3 Any insured loss is to be adjusted with the Owner and made payable to the Owner as trustee for the insureds, as their interests may appear, ...

\*　　\*　　\*　　\*　　\*　　\*

11.3.6 *The Owner and Contractor waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance provided under this Paragraph 11.3,* except such rights as they may have to the proceeds of such insurance held by the Owner as trustee. *The Contractor shall require similar waivers by Subcontractors and Subsubcontractors in accordance with Clause 5.3.1.5.* In waiving rights of recovery under terms of this paragraph, the term "Owner" shall be deemed to include his employees and the Architect and his employees as the Owner's representative as provided for in the Contract Document.

(emphasis added) *Id.* 395 N.E.2d at 323 (Footnote omitted). This court concluded:

The construction contract here explicitly required that the property insurance procured by South Tippecanoe include the interests of the various contracting parties. That the protection thereby afforded was intended to constitute the exclusive source for redress of damages sustained is buttressed by the waiver provisions discussed above. Therefore, these provisions convincingly lead to the conclusion that the parties were to be limited in recovery for property damages to the proceeds of the insurance required to be carried under the contract, rather than to the individual assets of a negligent Defendant.

*Id.* at 327–28. Here, the Mid–States/Gladiator contract contains no provision dealing with subcontractor's insurance or liability. Indeed, there is no mention of subcontractors in any context.

Nor are we persuaded by LeMaster's argument that it was an intended insured because the Mid–States/Gladiator contract was incorporated by reference in the Mid–States/LeMaster contract. We fail to see how Gladiator (or its insurer) can be bound by a contract to which it was not a party.

■ Therefore, we cannot say, as a matter of law, LeMaster was an intended insured because of the provisions of the Mid–States/Gladiator contract.

LeMaster claims that even if it were not an intended insured under the Mid–States/Gladiator contract, it is an insured under the provisions of the policy purchased by Glaval, and therefore may not be sued by Reliance. In *South Tippecanoe, supra,* Judge Robertson concluded, after an extensive survey of cases from other jurisdictions, that an insurer may not sue a party who is an insured under the policy. *See also, J.F. Shea Co. v. Hynds Plumbing & Heating* (1980), 96 Nev. 862, 619 P.2d 1207; *Transamerica Insurance Company v. Gage Plumbing & Heating Company* (10th Cir.1970), 433 F.2d 1051; *Louisiana Fire Ins. Co. v. Royal Indemnity Co.* (1949), La., 38 So.2d 807, 809; *United States Fire Insurance Company v. Beach* (1973), La.App., 275 So.2d 473, 475; *St. Paul Fire & Marine v. Murray Plumbing, Etc.* (1976), 65 Cal.App.3d 66, 135 Cal.Rptr. 120, 126; *see also, Baugh–Belarde Const. Co. v. College Utilities* (1977), Alaska, 561 P.2d 1211. Thus, our inquiry must determine whether LeMaster is an insured under either the basic policy in existence prior to the addition of the builder's risk endorsement or the endorsement.

In order to understand LeMaster's argument we must examine the coverage provided in Reliance's policy which includes the builder's risk endorsement. The policy is comprised of numerous forms. Coverage for physical damage to property is provided by a basic form which details the risks covered, exclusions and conditions and includes definitions of terms used in the policy. Various schedules and endorsements are attached to the basic form. The schedules list the locations covered, the type of property covered at each location, and the limits on the property. The endorsements, including the builder's risk endorsement at issue here, amend the provisions of the basic form. With this structure in mind we turn to the specific provisions.

LeMaster points to three provisions, which it claims support its assertion it is an insured. The first two provisions are found in the definition section of the basic form. These definitions read:

Buildings(s)–

Building(s) or structure(s) including attached additions and extensions, fences, permanently attached signs, glass, exterior lighting fixtures or poles (whether free standing or attached to the building), machinery and equipment constituting a permanent part of and pertaining to the service of the building(s); materials and supplies intended for use in construction, alteration, or repair of the building(s) or structure(s); personal property of the Named Insured used for the maintenance or service of the buildings, including fire extinguishing apparatus, outdoor furniture, floor coverings, domestic appliances and appliances for refrigerating, ventilating, cooking, dishwashing and laundering (but not including other personal property in apartments or rooms furnished by the Named Insured as landlord), all while at the described premises of within 100 feet thereof.

Personal Property–

usual or incidental to the occupancy of the Named Insured and including improvements and betterments all while at the locations described or within 100 feet thereof.

Personal Property also includes (unless indicated as excluded by [x] on Schedule of Locations C1 1103) property of others in the care, custody or control of the Named Insured for which the Named Insured is responsible, including the Named Insured's Interest in personal property of others to the extent of the value of labor, materials and charges furnished, performed or incurred by the Named Insured, except

as not insured in PROPERTY AND INTEREST NOT INSURED.

The third definition, found in the builder's risk endorsement, reads:

> The definition of building is amended to include materials and supplies of all kinds and temporary structures on-site owned by the Named Insured to be used in the construction of said building or structure all while in or on the described buildings or in the open including within vehicles on or within 100 feet of the described premises.

LeMaster contends these provisions function as an omnibus clause which would cover its tools, equipment and supplies, thereby making it an insured under the policy. We disagree.

■ The "provisions" cited are merely definitions of words used in the policy. They provide no coverage in themselves. Therefore, we must turn to the schedules and endorsements in which they appear. The policy states: "Coverage applies only where limit of liability is shown." The definition of "personal property" is inapplicable to the *builder's risk endorsement*— as there is no "limit of liability" for personal property. Also, the definition of "building" is inapplicable to the *existing building* because the schedule for that location shows no limit of liability for the building— instead only personal property is covered.

LeMaster cites several cases from other jurisdictions which, it claims, have held that similar clauses covered subcontractors' property. In *United States Fire Insurance Co. v. Beach*, (1973) La.App., 275 So.2d 473, the court held a subcontractor was a co-insured under the following policy provision:

> "this policy also covers temporary structures, materials, equipment and supplies of all kinds incident to the construction of said buildings or structures and, when not otherwise covered by insurance, *builders* machinery, tools and equipment owned by the insured or similar property of others for not exceeding the amount for which the insured is liable, all while in or on the described buildings, structures or temporary structures, or in the open (including within vehicles) on the described premises or within 100 feet thereof." (our emphasis)

A similar result was reached in *Louisiana Fire Insurance Co. v. Royal Indemnity Co.*, (1949), La.App., 38 So.2d 807, under the policy language which read:

> "This policy also covers items of labor, materials, equipment, supplies, forms and temporary structures of all kinds to be used in the construction of said building, and (when not otherwise insured, and provided that values of same are included in the amount of insurance carried under this policy) *builders'* machinery, tools and equipment; all while forming a part of or contained in said building or temporary structures or while forming a part of or contained in said building or temporary structures or while in cars on switches or side tracks on premises described, or within 100 feet of building described in this policy, or while in the open on premises described, or when adjacent thereto while on sidewalks, streets or alleys." (our emphasis)

In *J.F. Shea, supra*, the court held a sub-contractor was a co-insured under the following provision:

> "materials, equipment and supplies and temporary structures of all kinds incidental to the construction of buildings and structures, and *similar properties belonging to others* for which the insured is liable." (our emphasis)

Turning first to the definition of "building" as it applies to the builder's risk endorsement, we note in all these cases the policy provisions extended coverage to "property of others" either by specific use of that term or by referring to "builders'" property. Reliance's definition of "building" contains no reference to property of others and, in the amended definition of "building" in the builder's risk endorsement, the policy extends coverage to "materials and supplies of all kinds and temporary structures on-site *owned by the Named Insured* to be used in construction of said building...." (emphasis added) This supports a conclusion that only property owned by the named insured is covered.

■ The definition of "personal property", mentions "property of others" but limits such property to that "in the care, custody or control of the Named Insured for which the Named Insured is responsible, including the Named Insured's interest in personal property of others to the extent of the value of labor, materials and charges furnished, performed or incurred by the Named Insured...." As we noted, this definition is only applicable to personal property in the existing building or (under the terms of the definition) within 100 feet of the building. In addition, to be covered such property must be "in the care, custody or control of the Named Insured."[7] LeMaster has made no showing that any of its property fits this description. In *J.F. Shea, supra,* the court held the subcontractor was not required to show it had sustained a loss to its property in order to be deemed a co-insured. However, the policy involved in *J.F. Shea* was a builder's risk policy. The court reasoned:

> "because of the evident intent of the parties shown by the policy language used and the custom in the building trade, the builders' risk endorsement was a type of omnibus clause having the effect of making the issuing company an insurer of subcontractors and builders to the extent their labor, materials, builders' machinery, tools, etc., were brought into the building for construction purposes."

*Id.* at 475. It is reasonable to assume that a builder will have tools and equipment in a building under construction. However, this reasoning does not apply to coverage for property in an existing building. Here, as the party moving for summary judgment, LeMaster had the burden of showing it came within the coverage provided. It has failed to point to any evidence in the record, which would bring it within the coverage provided by this language.

LeMaster also argues there are several policy reasons for holding that a sub-contractor is an insured under a builder's risk policy. Two of the reasons suggested are: the reduction of litigation, the cost of which is passed on to the public in the form of higher insurance premiums; and the increase in the cost of construction, because each sub-contractor "would be forced to protect against liability for the loss to the entire project by paying high premiums for his own liability insurance." *South Tippecanoe, supra,* 395 N.E.2d at 329.

■ Although this argument has merit, under the rules of contract construction, "in the absence of fraud, mistake, ambiguity, illegality, duress or undue influence, extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 260, 286 N.E.2d 852, 861. Here, the policy provisions are not ambiguous, and, we may not add to or vary the terms of the written instrument.

Therefore, we conclude LeMaster was not an intended insured under the Mid–States/Gladiator contract or an insured under the provisions of Reliance's insurance policy.

II. *Whether Reliance was a Mere Volunteer*

LeMaster also claims that even if Reliance is entitled to subrogation, it is not entitled to recover the $126,530.35 payment to Glaval, because Reliance acted as a mere volunteer. LeMaster argues that because the limit for damages to personal property under Reliance's basic policy on the existing building was $150,000 and Reliance provided no coverage for damage to the existing building, Reliance's payment of $126,-530.35 in excess of the policy limit was

---

**7.** We note that although most cases which have considered the meaning of "care, custody and control" have dealt with the term in the context of an exclusion contained in a liability policy—therefore strictly construing the provision against the insurer—the predominant view is that whether property is in the care, custody or control of an insured is a question of fact. *American Family Mutual Insurance Co. v. Bentley* (1976), 170 Ind.App. 321, 352 N.E.2d 860. *See* Annot. 8 A.L.R. 4th 563.

voluntary and therefore not subject to subrogation.

Reliance argues that this issue was not before the trial court and is therefore not a proper subject for review. LeMaster acknowledges this issue was not argued in the summary judgment hearing or the briefs in support of the motion and was not addressed by the trial court's order. However, LeMaster claims it was unaware of this basis for partial summary judgment until the day of the hearing when, during the testimony of Kenneth Hubert, Reliance's Claim Manager, it first learned there had been a coverage dispute and for the first time had an opportunity to examine the contents of Reliance's claim file. LeMaster claims the record supports its assertion that Reliance was a mere volunteer.

First, we note Indiana Rules of Procedure, Trial Rule 56(C) requires a hearing on a summary judgment be preceded by at least ten days notice. *Otte v. Tessman* (1981), Ind., 426 N.E.2d 660. This interval allows the nonmovant an opportunity to prepare materials supporting its allegation there are material issues of fact. *Harder v. Estate of Rafferty* (1989), Ind.App. 542 N.E.2d 232. Reliance did not have this opportunity.[8]

In *Goodyear v. Goodyear* (1982), Ind. App., 441 N.E.2d 498, this court refused to affirm a grant of summary judgment entered on a specific issue on the basis of a different theory first raised on appeal. The court noted basic fairness requires a party to have some notice an issue is before the court. *See also, Indiana & Michigan Electric Co. v. Terre Haute Industries* (1984), Ind.App., 467 N.E.2d 37; *Bahre v. Metropolitan School District* (1980), Ind.App., 400 N.E.2d 197. This is especially true where, as here, it appears there may be genuine issues of material fact or the inferences to be drawn therefrom.

Generally, a mere volunteer is not entitled to subrogation. *Ohio Casualty Group v. Royal Globe Insurance Companies* (1980), Ind.App., 413 N.E.2d 678. A person is a mere volunteer "if in making payment he has no right or interest of his own to protect and acts without being requested to do so by a person liable on the obligation." *Id.* at 680. In addition, "a person who has paid a debt under the colorable obligation to do so or under an honest belief that he is bound or who mistakenly but in good faith believes he is liable is entitled to subrogation." *Id.*

LeMaster bases its assertion that Reliance was a mere volunteer in regard to the $126,530 payment on the testimony of Hubert and a report from General Adjustment Bureau to Reliance regarding the investigation and adjustment of the loss. We note, that, although this report is included in the appendix to LeMaster's brief, LeMaster has failed to indicate where it is to be found in the record, nor did our cursory examination reveal such document. We cannot consider matters not in the record. The record in this case totals nearly 1,500 pages. We will not search the record for this document and will consider only Hubert's testimony.

Hubert testified a dispute arose during the adjustment of Glaval's claim involving the amount of coverage for personal property in the existing building. He stated the dispute involved "the total amount of the coverage for the contents involving the machinery." He also testified that Glaval filed an errors and omissions claim against its insurance agent, which was resolved when Reliance paid the additional amount.

LeMaster argues that because the limit on contents was $150,000 the additional $126,530 payment must have been voluntary, as it was not required under the policy. However, Hubert also testified:

"A. Well, as I recall it—as I recall, the fact the way it is—there was a question as to whether or not we had a Hundred

ter such assertion. However, as we will explain, the testimony and documents in question do not clearly support only one inference—that Reliance was a volunteer.

and Fifty Thousand applicable on the, ah, let's see, that would have been on the personal property loss and then we had an additional coverage on the machinery and equipment loss. Their claim there, I think, was a Hundred and Twenty-six Thousand Dollars, and we finally resolved it the way the policy was written that we would provide the coverage for the entire loss."

This testimony does not clearly indicate the basis for the additional payment. Indeed, it suggests there may have been other coverage under the policy applicable to this loss.[9]

█ In light of the fact Reliance had no notice this was an issue, and therefore no opportunity to support an assertion there were material facts in issue, we cannot conclude there were no such facts. Therefore, LeMaster was not entitled to summary judgment on this issue.

Affirmed.

CONOVER, J., concurs.

SULLIVAN, J., concurs in result.

---

9. We note that Reliance's policy covers numerous locations and consists of numerous forms and endorsements. It is possible the additional payment was required by such forms.