**INDIANA ERECTORS, INC.,**
**Appellant–Defendant,**

v.

**The TRUSTEES OF INDIANA**
**UNIVERSITY, Appellee–**
**Plaintiff.**

No. 53A01–9703–CV–88.

Court of Appeals of Indiana.

Oct. 15, 1997.

Rehearing Denied Dec. 3, 1997.

Darla S. Brown, William H. Kelley, Kelley, Belcher & Brown, Bloomington, for Appellant–Defendant.

Peter A. Schroeder, Ellen White Quigley, Norris, Choplin & Schroeder, Indianapolis, for Appellee–Plaintiff.

## OPINION

ROBERTSON, Judge.

Indiana Erectors, Inc. appeals the judgment entered in favor of the Trustees of Indiana University [I.U.] after a jury trial in the amount of $1,900,000.00 representing damages caused by a fire, and an additional $899,090.96 representing pre-judgment interest. Indiana Erectors raises two issues, neither of which constitutes reversible error.

## FACTS

The operative facts are not disputed. In December of 1990, I.U. contracted with Goheen General Construction, Inc., as one of three prime contractors, to renovate the Student Building on the Bloomington, Indiana campus. The three prime contractors included a General Contractor (Goheen), a Mechanical Contractor, and an Electrical Contractor. Goheen then entered into a subcontract with Structural Components, Inc. [SCI], which in turn entered into a subcontract with Indiana Erectors. On December 17, 1990, employees of Indiana Erectors caused a fire which damaged the Student Building. Water used to put out the blaze damaged an adjacent building.

I.U.'s general insurance carrier, the Allendale Mutual Insurance Company, paid I.U. approximately $1.9 million dollars for the loss. No additional insurance policy had been obtained to cover the renovation project. Accordingly, none of the contractors or subcontractors on the project were specifically named as insureds under any I.U. insurance policy. In December of 1992, I.U.'s trustees brought the present lawsuit against

Indiana Erectors seeking damages under the alternate theories of 1) negligence, and 2) the breach of the SCI/Indiana Erectors subcontract of which I.U. was a third-party beneficiary. The present lawsuit may appropriately be characterized as an insurance subrogation action brought by Allendale in the name of I.U. After the trial, the jury returned a verdict in favor of I.U. in the amount of $1.9 million. The amount of the verdict/judgment reveals that the judgment was based on the breach of contract theory because, as revealed by the jury verdict forms, the jury had reduced I.U.'s recovery under its negligence theory by 25% (representing fault allocated to I.U.) producing a verdict in the amount of $1.425 million. Additional facts are supplied as necessary.

## DECISION

### I.

*Whether Indiana Erectors was an Intended Insured.*

■ It is not an uncommon practice in construction contracts for the owner to agree to purchase insurance to protect the interests of some or all of the contractors, subcontractors, and materialmen. *LeMaster Steel Erectors, Inc. v. Reliance Insurance Co.,* 546 N.E.2d 313, 316–17 (Ind.Ct.App.1989); *South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320, 323 (1979); *Morsches Lumber, Inc. v. Probst,* 180 Ind.App. 202, 388 N.E.2d 284, 287 (1979). An agreement to insure is an agreement to provide both parties with the benefits of insurance regardless of the cause of the loss (excepting wanton and willful acts). *Morsches Lumber,* 388 N.E.2d at 287. An agreement to insure differs from an agreement to indemnify in that, with an agreement to insure, the risk of loss is not intended to be shifted to one of the parties, but is instead intended to be shifted to an insurance company. *Id.* Neither party intends to assume a potential liability because both are demonstrating appropriate business foresight in avoiding liability by allocating it to an insurer. *Id.*

In an arrangement where one party agrees to purchase insurance for the benefit of both parties, the first party in effect agrees to waive the intended insured's liability. *LeMaster,* 546 N.E.2d at 317. Thus, the party who agreed to purchase insurance has no cause of action against the party for whose benefit the insurance was intended regardless of the fault of this intended insured. *Id.* And, as the rights of a subrogated insurer can rise no higher than the rights of its insured, the first party's insurance carrier has no subrogation cause of action against the intended insured. *Id.; South Tippecanoe,* 395 N.E.2d at 331–34.

Indiana Erectors asserts that it had been entitled to judgment as a matter of law in the present subrogation action because it had been an intended insured under the interdependent, contractual relationships between I.U., Goheen, and the subcontractors. The trial court determined that, from a plain reading of the contract between I.U. and Goheen, that I.U. had not agreed to purchase insurance to benefit any of the subcontractors. Accordingly, the trial court denied Indiana Erectors' motion for summary judgment.

It is the duty of the courts to interpret a contract to ascertain the intent of the parties. *First Federal Savings Bank of Indiana v. Key Markets, Inc.,* 559 N.E.2d 600, 603 (Ind. 1990). We determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Rieth–Riley Construction Co. v. Auto–Owners Mutual Insurance Co.,* 408 N.E.2d 640, 645 (Ind.Ct.App. 1980). When a contract is clear in its terms and the intentions of the parties apparent, the contract will be enforced consistently with the bargain that was made. *Key Markets,* 559 N.E.2d at 604. Whether a contract is ambiguous is a question of law for the court. *Indiana Industries, Inc. v. Wedge Products, Inc.,* 430 N.E.2d 419, 423 (Ind.Ct. App.1982). When the terms of a contract are unambiguous, the meaning of the contract is a question of law for the court. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols,* 583 N.E.2d 142, 146 (Ind.Ct.App. 1991). Therefore, courts appropriately resolve disputes regarding unambiguous contracts as a matter of law. *Id.*

Indiana University and Goheen, the prime contractor over Indiana Erectors, entered into a 63 page written construction contract. The contract consisted of a standard printed form which had been extensively modified by typewritten provisions inserted in a column provided for such modifications parallel to the printed form language. Article 11 of the contract governed insurance. All of the Article 11 form language had been expressly deleted and replaced with typewritten terms. Article 11.2.1 governed Builder's Risk Insurance, and provided as follows:

> The Owner shall maintain during the course of construction, Builder's Risk Insurance ... *The insured shall be the Owner and the Contractor(s)* as their interest may appear; and loss, if any, is to be adjusted with and payable to the Contractor upon written request to the Owner. The Contractor shall be responsible for and insure, if desired, all materials, equipment, supplies not on the site and to become a part of the completed building, Contractor's equipment, tools, scaffolding, staging, towers, forms and temporary buildings, and other materials, equipment and supplies not intended to become a part of the construction.
>
> Anything herein contained to the contrary notwithstanding, the Owner and Contractor waive all rights, each against the other, for damages caused by perils covered by any insurance purchased in accordance with the provisions of this subsection (Builder's Risk Insurance), except such rights as they may have to the proceeds of such insurance. This provision shall not release the Contractor from his obligation to complete, according to plans and specifications, the project covered by the Contract and the Contractor and his surety shall be obligated to full performance of the Contractor's undertaking.
>
> When requested, a certificate of the Builder's Risk Insurance will be issued to each prime contractor.

(Emphasis added).

Indiana Erectors argues that it is an intended insured as one of the "Contractors" involved in the project. We disagree.

The term "Contractor" is defined under Art. 4.1.1.2 of the contract as:

> all the Prime contractors, unless reference is made to the intended specific Prime Contractor.

Paragraph 4.1.1.1 provides:

> The work of this Project has been divided into the following parts, for which there will be separate Prime Contractors as indicated below:
>
> .1 General Construction work, by the General Contractor,
>
> .2 Mechanical Construction work, by the Mechanical Contractor.
>
> .3 Electrical Construction work, by Electrical Contractor.
>
> .4 Other.

As noted earlier, this project involved three Prime Contractors and Goheen was the prime contractor under which SCI and Indiana Erectors were subcontracted. The term "Subcontractor" was defined under Art. 5.1.1 as:

> a person or entity who has a direct contract with the Contractor to perform any of the Work at the site.

Additionally, Art. 5.2.4 provides:

> Nothing contained in this Contract shall create any contractual relation between any subcontractor and the Owner.

Accordingly, the use of the term "Contractor(s)" unambiguously refers to a Prime Contractor or the Prime Contractors, and does not include subcontractors.

Thus, the present case is analogous to *LeMaster* where we concluded that, under the unambiguous language of the Article 11 insurance provisions of the construction contract, the general contractor was an intended insured, but the subcontractor was not. 546 N.E.2d at 317–20. Accordingly, the insurance subrogation action could properly proceed against the subcontractor. *Id.* The *LeMaster* court distinguished the Article 11 language used in the construction contract under scrutiny in *LeMaster* with the Article 11 language used in the standard construction contract scrutinized in *South Tippecanoe*, 395 N.E.2d at 327–28. 546 N.E.2d at 317. Indiana University concedes that if it

had not expressly modified the standard insurance provisions of Article 11 in the construction contract involved in the case at bar, the contract would have been similar (if not identical) to the one scrutinized in *South Tippecanoe* and Indiana Erectors would indeed have been an intended insured.

The trial court correctly determined that no subcontractor was an intended insured under the unambiguous terms of the construction contract between I.U. and Goheen. Thus, *LeMaster,* and not *South Tippecanoe,* controls the disposition of the present case. The present insurance subrogation action was appropriately maintained against Indiana Erectors, and the trial court correctly denied Indiana Erectors' motion for summary judgment.

Indiana Erectors argues that Goheen's subcontract with SCI and SCI's subcontract with Indiana Erectors gave rise to a legitimate expectation that Indiana Erectors was an intended insured under I.U.'s contract with Goheen. Again, *LeMaster* controls. Neither an owner nor the owner's insurer can be bound by a subcontract to which neither was a party. 546 N.E.2d at 318.

## II.

### *Waiver, Estoppel or Release*

■ Indiana Erectors points out that its subcontract was not terminated after the fire, and in fact, it continued to work on the Student Building and was paid from the insurance proceeds. Indiana Erectors asserts that it was given the impression that the fire was covered by I.U.'s insurance and, that Indiana Erectors was not given notice until long after its work had been completed that I.U. (or its insurer) intended to hold Indiana Erectors responsible for the fire. Indiana Erectors argues that I.U. cannot be permitted to bring a breach of contract after it had accepted and paid for Indiana Erectors work.

In support of its argument, Indiana Erectors cites cases similar to those discussed under Issue I involving subrogation claims involving named or intended insureds. As discussed above, as I.U. had not agreed to provide insurance for the subcontractors, Indiana Erectors was neither a named or

intended insured, and I.U.'s insurer was not barred from seeking subrogation for the proceeds paid for the losses incurred for the fire.

We must conclude that Indiana Erectors has cited no authority, nor are we aware of any, which supports the novel argument advanced. We agree with I.U. that this "void speaks for itself." Frankly, we see no incongruity, impropriety, or problem in I.U.'s conduct of keeping Indiana Erectors on the job and paying it for the work which was ultimately performed satisfactorily, while, at the same time, demanding that it be responsible for the damages caused by the fire. Therefore, we find no error.

## III.

### *Prejudgment Interest*

■ Indiana Erectors' sole attack on the award of prejudgment interest is its assertion that I.U. failed to comply with the provisions of Ind.Code 34–4–37–1 et seq. Effective in 1988, this statutory provision provided *tort* claimants with a new substantive right to recover prejudgment interest as a component of compensatory damages. *In re Johnson,* 120 B.R. 461 (Bankr.N.D.Ind.1990); I.C. 34–4–37–3 (Chapter applies to actions arising out of *tortious* conduct). However, under the common law, Indiana courts have permitted awards of prejudgment interest as a component of *contract* damages since long before the effective date of I.C. 34–4–37–1 et seq. *See Indianapolis Machinery Co., Inc. v. Cohen,* 177 Ind.App. 208, 378 N.E.2d 931, 935 (1978).

As noted in the FACTS section, the verdict and judgment in the present case were based on a breach of contract theory. Therefore, the award of prejudgment interest was not based on the statute providing for awards of prejudgment interest on tort judgments and any noncompliance with the procedures outlined under this statute is irrelevant. Therefore, we find no error.

Judgment affirmed.

BAKER and RUCKER, JJ., concur.