S.C. NESTEL, INC., d/b/a Advantage Design Build, Appellant–Defendant,

v.

FUTURE CONSTRUCTION, INC., Appellee–Plaintiff.

No. 49A05–0411–CV–633.

Court of Appeals of Indiana.

Oct. 31, 2005.

James S. Kowalik, Christopher E. Baker, Hostetler & Kowalik, P.C., Indianapolis, for Appellant.

John A. Hovanec, Anthony M. Campo & Associates, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant S.C. Nestel, Inc. d/b/a Advantage Design Build (Nestel) appeals the trial court's judgment in favor of appellee-plaintiff Future Construction, Inc. (Future) regarding Future's claims for negligence and breach of contract. Specifically, Nestel contends that the trial court erred in denying its motion for summary

judgment and in failing to enforce the contractual waiver of subrogation clause in its judgment. Finding that the waiver of subrogation clause is controlling, we reverse the judgment of the trial court.

## FACTS

The parties stipulated to the following relevant facts. Future, a general contractor, contracted with the Metropolitan School District of Perry Township (MSD Perry Township) on August 23, 1999, to construct a post frame warehouse in Indianapolis. On September 28, 1999, Future contracted with Nestel as a subcontractor to build the warehouse. The subcontract incorporated the MSD Perry Township/Future contract by reference. On November 30, 1999, Nestel contracted with Coffey Construction, Inc. (Coffey) as a sub-subcontractor to construct the warehouse. Future was not a party to the contract between Nestel and Coffey, nor did Future have a contract with Coffey. On February 24, 2000, the warehouse collapsed while Coffey was building it. MSD Perry Township paid Nestel $17,214 for demolition and removal of debris, and Future reimbursed MSD Perry Township through Cincinnati Insurance, the builder's risk insurance provider for Future. In May 2000, Future issued Change Order # 2 to the subcontract in the amount of $106,350 for rebuilding the warehouse to its pre-collapse condition. The total claim paid by Cincinnati Insurance was $143,164.70.

The contracts at issue are standard form American Institute of Architects (AIA) contracts. The general conditions are those contained in AIA document A401, 1978 edition. Article 11 of the general conditions sets out the requirements for who is to provide what type of insurance. Article 11.1 provides that the contractor would provide liability insurance and Worker's Compensation insurance for claims arising out of the construction. Paragraph 11.1.2 forbids Nestel from assigning or subcontracting its subcontract without the written consent of Future and from subcontracting portions of the subcontract without the written consent of Future "when such notification is requested by the Contractor." Appellant's App. p. 277. Paragraph 11.2.1 provides that the owner is responsible for purchasing the owner's usual liability insurance. Paragraph 11.3.1 provides:

> Unless otherwise provided, [MSD Perry Township] shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site on a replacement cost basis without voluntary deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than [MSD Perry Township] has an insurable interest in the property required by this Paragraph 11.3 to be covered, whichever is earlier. This insurance shall include interests of [MSD Perry Township], [Future], Subcontractors and Sub-subcontractors in the Work.

Appellant's App. p. 316. Paragraph 11.3.1.1 states:

> Property insurance shall be on an *all-risk policy form and shall insure against the perils of* fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief,

*collapse*, false-work, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirement, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss. Coverage for other perils shall not be required until otherwise provided in the Contract Document.

*Id.* (emphasis added).

The MSD Perry Township/Future contract, which was incorporated into the Nestel/Future contract, provided for waivers of subrogation in Paragraph 11.3.7:

[MSD Perry Township] and [Future] waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such other rights as they have to proceeds of such insurance held by [MSD Perry Township] as fiduciary. [MSD Perry Township] or [Future], as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agent and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though they per-

son or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

Appellant's App. p. 317.

The Nestel/Future subcontract contained the following relevant provisions:

9.1 Prior to starting work, [Nestel] shall obtain the required insurance from a responsible insurer, and shall furnish satisfactory evidence to [Future] that [Nestel] has complied with the requirements of this Article 9. Similarly, [Future] shall furnish to [Nestel] satisfactory evidence of insurance required of [Future] by the Contract Documents.

9.2 [Future] and Subcontractor waive all rights against each other and against [MSD Perry Township], and Architect, separate contractors and all other subcontractors for damages caused by fire or other perils to the extent covered by property insurance provided under the General Conditions, except such rights as they may have to proceeds of such insurance.

Appellant's App. p. 276.

On December 26, 2001, Cincinnati Insurance, by and through Future, filed a complaint alleging that Nestel and Coffey were negligent and responsible for the collapse and damage to the warehouse and that they breached their contracts by not covering the loss of the damages by way of Nestel's insurance coverage. Essentially, the action was brought as a subrogation claim with Cincinnati Insurance asserting that it is subrogated to the rights of Future.

On December 6, 2002, Nestel moved for summary judgment on the issue of the

enforceability of the waiver of subrogation clause, arguing that the intent of the parties "was to allocate the risk of damage to the building during construction by the provision of property or builders risk insurance by either the owner or the general contractor." Appellant's App. p. 140. Coffey was not a party to the motion. The trial court denied Nestel's summary judgment motion and denied Nestel's request to certify the issue for interlocutory appeal.[1]

The trial was held on August 10, 2004. On October 29, 2004, the trial court entered its findings of fact, conclusions of law, and judgment in favor of Future, awarding $143,164.70 plus costs and interest. The trial court found that the waiver of subrogation clause had been "superseded by Nestel's breach of its contract with Future by subcontracting work to Coffey without notice to Future and by the negligent acts of Nestel and Coffey which led to the collapse of the Warehouse." Appellant's App. p. 259–60. Nestel now appeals.

## DISCUSSION AND DECISION

Nestel contends that the trial court erred in failing to enforce the subrogation clause at both the summary judgment and the judgment phases. Specifically, Nestel argues that precedent in similar cases has found waiver of subrogation clauses to be valid and enforceable even if there has been a breach of contract or negligence by a subcontractor.

### I. Standard of Review

Upon reviewing the grant or denial of summary judgment, we use the same standard of review as the trial court. Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Poznanski v. Horvath*, 788 N.E.2d 1255, 1258 (Ind.2003). We will construe all facts and reasonable inferences in favor of the non-moving party. *Troxel v. Troxel*, 737 N.E.2d 745, 748 (Ind.2000). The review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

On the other hand, where the trial court enters specific findings of fact and conclusions of law with respect to a final judgment, we apply a two-tiered standard of review; first we address whether the evidence supports the findings, and then whether the findings support the judgment. *Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171, 1174 (Ind.Ct.App. 2002), *trans. denied*. The trial court's findings and conclusions will be set aside only if they are clearly erroneous—when the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839–40 (Ind.Ct.App.2002).

The construction of the terms of a written contract is a pure question of law so our standard of review is de novo. *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 716 (Ind.Ct.App.1999), *trans. denied*.

The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the intent of the parties is determined from the four corners of that instrument. If, however, a contract is

---

1. The trial court's orders are not included in the record on appeal.

ambiguous or uncertain, its meaning is to be determined by extrinsic evidence and its construction is a matter for the fact finder. In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties. The contract is to be read as a whole when trying to ascertain the intent of the parties. The court will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes the provisions to be conflicting.

*Id.* at 716–17.

Nestel contends that the outcome of this case is controlled by a trio of cases: *S. Tippecanoe Sch. Bldg. Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320 (1979), *Morsches Lumber, Inc. v. Probst,* 180 Ind.App. 202, 388 N.E.2d 284 (1979), and *Midwestern Indem. Co. v. Sys. Builders, Inc.,* 801 N.E.2d 661 (Ind. Ct.App.2004), *trans. denied.* In *S. Tippecanoe,* the owner brought an action against the contractor and subcontractor for negligence, strict liability, breach of implied warranty, and breach of contract after a gas explosion and fire at a high school that was under construction. The trial court granted summary judgment to the contractor and subcontractor, finding that the waiver of subrogation clause barred recovery of amounts paid out under the builder's risk insurance policy, and we affirmed.

The contract in *S. Tippecanoe* bore a marked resemblance to the case at bar; it stated that the owner would provide property insurance on the project, which included the interest of the owner, contractor, subcontractors, and sub-subcontractors, and that the owner and contractor would waive claims against each other and that the contractor would require similar waivers by subcontractors and sub-subcontractors. *Id.* at 354–56, 395 N.E.2d at 323–24. The *S. Tippecanoe* court examined a number of cases from other jurisdictions and agreed with:

> those cases holding that an agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a party of a contract agrees as part of his or its duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts).

*Id.* at 362, 395 N.E.2d at 327. The *S. Tippecanoe* court further noted, "[A] builder's risk insurer is not entitled to subrogate against one whose interests are insured even though the party's negligence may have occasioned the loss, in the absence of design or fraud." *Id.* at 363, 395 N.E.2d at 328. In short, such contracts place the risk of loss from the project on the insurance, not on the insured.

In reaching its decision, the *S. Tippecanoe* court relied in part on *Morsches.* In *Morsches,* we faced "the question of whether an agreement to provide insurance constitutes an agreement to limit the recourse of the party acquiring the policy solely to its proceeds even though the loss may be caused by the negligence of the other party to the agreement." *Morsches,* 180 Ind.App. at 203, 388 N.E.2d at 285. In determining that the trial court erred in finding against the defendant-builder for negligence in the construction of a barn, the *Morsches* court noted,

[W]here neither party has a legal duty to insure but each foresees the potential of a loss occurring by negligence or accident, the reasonable expectation of both in expressly imposing the duty to insure against the loss upon one of them is that the other will be protected as fully as if he had assumed the duty himself.

*Id.* at 206, 388 N.E.2d at 286–87.

*Midwestern* reaffirmed the reasoning of *S. Tippecanoe.* Midwestern, as subrogee of Louise Litwick and Action Steel, Inc., sued to recover from Varco–Pruden Building, a subcontractor of Systems Builders, Inc., the general contractor, the amount it paid to its insureds for damage to their property after an addition to an industrial building collapsed from the weight of snow on the roof. The contract at issue contains the same AIA form provisions at issue here. Midwestern alleged negligence, breach of express warranty, breach of contract, and breach of implied warranties in its complaint, and the trial court granted summary judgment to Varco–Pruden on all of these claims. We affirmed the trial court on appeal, holding that:

> The plain language of the construction contract indicates that the insurance coverage and waiver of subrogation rights pertain to damage caused by perils insured against such as fire and collapse. It is the relationship between the damage and the perils insured against that controls the waiver of subrogation. Here, it is the collapse of the building addition that is insured against by the Midwestern policy. *Waiver does not depend on what theory, contract, warranty, or negligence, might be asserted to seek recovery for the damages caused by the collapse.* The waiver of subrogation does bar recovery for negligence.

*Midwestern,* 801 N.E.2d at 672 (emphasis added).

An examination of these three cases in conjunction with the language of the contracts at issue reveals that it was the intent of MSD Perry Township, Future, and Nestel to allocate the risk of damage during construction through property or builder's risk insurance held by either MSD Perry Township or Future. *See* Appellant's App. p. 276, ¶ 9.1, 316, ¶ 11.3.1.1. As noted in *Midwestern,* it makes no difference whether the theory of recovery is negligence or breach of contract—the waiver of subrogation provision bars recovery.

Nevertheless, Future asserts that Coffey was not a subcontractor pursuant to Future and Nestel's subcontract; therefore, *S. Tippecanoe, Midwestern,* and *Morsches* do not apply. Future notes that Nestel hired Coffey without providing written notice to Future as was required by Paragraph 11.1.2 of their contract. Thus, Future contends, Nestel acted willfully and wantonly or in a grossly negligent manner, and *S. Tippecanoe* and *Morsches* both except willful and wanton conduct from their analyses. *S. Tippecanoe,* 182 Ind.App. at 362, 395 N.E.2d at 327; *Morsches,* 180 Ind.App. at 206, 388 N.E.2d at 287.

According to our Supreme Court, a willful and wanton act of commission is "an intentional act done with the reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time." *Witham v. Norfolk & W. Ry. Co.,* 561 N.E.2d 484, 486 (Ind. 1990). Our Supreme Court has also noted that "[g]ross negligence is generally defined as '[a] conscious, voluntary act or omission in reckless disregard of . . . the consequences to another party.' Black's Law Dictionary 1057 (7th ed.1999)." *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003).

In support of this argument, Future cites to *Ind. Erectors, Inc. v. The Trustees of Ind. Univ.*, 686 N.E.2d 878 (Ind.Ct.App.1997). In *Ind. Erectors*, Indiana University contracted with Goheen General Construction, Inc. as one of three prime contractors to renovate a building. Goheen subcontracted the work to Structural Components, Inc., who in turn sub-subcontracted the work to Indiana Erectors. This court found that Indiana Erectors was not an insured under the Goheen/Indiana University contract where the contract specifically stated, "Nothing contained in this Contract shall create any contractual relation between any subcontractor and the Owner." *Id.* at 881.

Future also cites to *LeMaster Steel Erectors, Inc. v. Reliance Ins. Co.*, 546 N.E.2d 313 (Ind.Ct.App.1989). Gladiator Van Conversions contracted with Mid-States Construction Company, Inc. to perform structural steel work, and LeMaster was a subcontractor of Mid–States. This court found that LeMaster was not an insured under the Gladiator/Mid–States contract because the contract "contains no provision dealing with subcontractor's insurance or liability. Indeed, there is no mention of subcontractors in any context." *Id.* at 317. We also rejected LeMaster's argument that it was an intended insured because the Mid–States/Gladiator contract was incorporated by reference into the Mid–States/LeMaster contract because Gladiator was not a party to that contract. *Id.* at 318.

Future's reliance upon *LeMaster* and *Ind. Erectors* is misplaced. *LeMaster* is distinguishable from the present case because the contract in *LeMaster* made "no mention of subcontractors in any context," *LeMaster*, 546 N.E.2d at 317, whereas there is an explicit reference to subcontractors and sub-subcontractors in the MSD Perry Township/Future contract.

Appellant's App. p. 317. In addition, *Ind. Erectors* is distinguishable because the owner and contractor modified the standard insurance provisions so that subcontractors were excluded from the insurance provided by the owner. *Ind. Erectors*, 686 N.E.2d at 881–82. But here, Article 11 of the MSD Perry Township/Future contract provides for insurance coverage for the owner, contractors, subcontractors, and sub-subcontractors. Appellant's App. p. 316–17.

 Furthermore, the trial court did not, as Future contends, find that Nestel's actions were willful and wanton and/or grossly negligent. The trial court stated in its findings,

Although Nestel has advance[d] the theory that Future has waived its right of subrogation against Nestel due to the terms of paragraph 11.3.7 of the contract between Future and Perry Township, *this provision is superseded by Nestel's breach of its contract* with Future by subcontracting work to Coffey without notice to Future *and by the negligent acts of Nestel and Coffey* which led to the collapse of the Warehouse.

Appellant's App. p. 259–60 (emphasis added). The trial court found nothing more than a breach of contract and negligence, and we see no reason to charge Nestel with willful and wanton or gross negligence on these facts. And as noted in *Midwestern*, negligence and breach of contract do not supersede a waiver of subrogation. *Midwestern*, 801 N.E.2d at 672. As such, the waiver of subrogation clause is valid and enforceable.

Future further attempts to distinguish this case from *S. Tippecanoe* by arguing that in the present case the Future/Nestel contract required Nestel to carry liability insurance, which Nestel procured on December 29, 1999. *See* Appellant's App. p.

276, ¶¶ 9.1, 9.2. Thus, two insurance policies existed from which recovery could be sought. Furthermore, the Future/Nestel contract states in Paragraph 12.5.1, "[Future] shall make no demand for liquidated damages for delay ... and liquidated damages shall be assessed against [Nestel] only for the negligent acts and failure to act in accordance with the terms of this Agreement." Appellant's App. p. 279. Thus, contends Future, Nestel agreed to be responsible for its own negligence.

However, Paragraph 11.1.1 of the MSD Perry Township/Future contract, which states in pertinent part:

> [Future] shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect [Future] from claims set forth below which may arise out of or result from [Future's] operations under the Contract and for which [Future] may be legally liable, whether such operations be by [Future] or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:
>
> . . .
>
> .5 claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom.

Appellant's App. p. 315–16. Thus, the discussion of liability insurance that Future was required to carry excludes damage to the warehouse itself. Property insurance owned by MSD Perry Township was to cover damage to the warehouse. Appellant's App. p. 316, ¶ 11.3.1. It simply makes no sense that Nestel, as the subcontractor, would be required to provide greater liability coverage than Future was required to own as the contractor, especially in light of the fact that MSD Perry Township carried property insurance that covered collapse for the benefit of Future. Furthermore, Future's reliance on Paragraph 12.5.1 is misplaced. That paragraph pertains solely to liquidated damages for delay awarded under the contract and is not related to the collapse of the building. To summarize, in spite of any breach of contract or negligence by Nestel, the waiver of subrogation clause is controlling in this case.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

RILEY, J., and MATHIAS, J., concur.