Ronald D. LIGGETT, d/b/a Liggett Construction Company, Appellant–Third–Party Plaintiff,

v.

Dean A. YOUNG and Elisabeth Young, Appellees–Third–Party Defendants.

No. 38A02–0511–CV–1086.

Court of Appeals of Indiana.

July 24, 2006.

Rehearing Denied Oct. 19, 2006.

Mark E. GiaQuinta, Robert W. Eherenman, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellant.

Robert G. Forbes, Forcum, Forbes, Danielson & Danielson, LLP, Hartford City, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellant-third-party-plaintiff Ronald D. Liggett, d/b/a Liggett Construction Company (Liggett), appeals from the trial court's order granting summary judgment in favor of appellees-third-party-defendants Dean and Elisabeth Young (collectively, the Youngs). Specifically, Liggett raises three issues: (1) whether the trial court erred in refusing to consider new evidence as it reconsidered its previous order granting partial summary judgment in favor of the Youngs; (2) whether the trial court erred in failing to conclude that the contract entered into between the Youngs and Liggett was void because Dean, an attorney, violated Professional Conduct Rule 1.8 by entering into the con-

tract; and (3) whether the contract is ambiguous and should be construed against Dean, who drafted it. Finding no error, we affirm the judgment of the trial court.

## FACTS

At some point before July 2, 1999, Dean hired Liggett to build a home for the Youngs in Blackford County. At that time, Dean, an attorney licensed in Indiana, was representing Liggett in litigation concerning an unrelated construction contract matter. That representation continued during the negotiation of the parties' contract and throughout the construction of the Youngs' residence.

After Liggett had broken ground and begun construction on the home, Dean drafted the construction contract. At that time, Liggett considered Dean to be his attorney. According to Liggett, Dean verbally assured him that "there would be no problems as a result of [Dean's] dual status as Liggett's attorney and as a party to the Construction Contract." Appellant's Br. p. 4. Dean used a state bar association form entitled "Building, Construction and No–Lien Agreement" as the template for the contract, though he made certain changes to the boilerplate form. The parties executed the contract on July 2, 1999.

Part 1 of the contract provides as follows:

> Builder, in consideration of * the sum of Two Hundred Thirty Thousand Dollars, ($230,000), to be paid to it by the Owner as hereinafter provided, hereby agrees to furnish all of the materials and to perform and/or provide all of the labor necessary to erect, construct and completely finish in a substantial and workmanlike manner, the improvements, as identified below, upon real estate located in Blackford County ...

> The improvements to be made under this contract are described in, and shall be erected and constructed according to and in the manner set out in, the plans and specifications which have been identified by the parties hereto by affixing their initials or signatures thereto and which are attached thereto, made a part hereof and respectively marked Exhibit "A" and Exhibit "B".

Appellant's App. p. 32. Neither Exhibit A nor Exhibit B was attached to the contract, and no plans and specifications were initialed by the parties.

The asterisk (*) in Part 1 referred to a modification made by Dean, and referred to an "additional covenant" in Paragraph 12(b). The additional covenant provided that the contract price was "subject to changes which may from time to time be made following construction [sic] between builders and owners, and, where necessary, following consultation with Owners' construction/mortgage lenders." *Id.* p. 32, 34. The parties agree that the provision contains a scrivener's error, and they also agree that the provision was intended to read as follows: the contract price is "subject to changes ... following *consultation* between builders and owners, and, where necessary, following consultation with Owners' construction/mortgage lenders." Appellant's Br. p. 6; Appellees' Br. p. 9.

Paragraph 12(b) must be read in conjunction with Paragraph 8, which provides as follows:

> Owner may order extra work or make changes by altering, adding to, or deducting from the work described in the initial plans and specifications attached hereto; PROVIDED, HOWEVER, that before such work or changes are made, the adjustment—upward or downward—of the contract price hereunder to take account of such work or changes shall first be agreed to in writing by the parties hereto.

Appellant's App. p. 33–34. Liggett argues that Paragraph 12(b) conflicts with Paragraph 8, while Dean contends that neither has an impact on the other.

During the construction of the Youngs' home, Liggett alleges that he provided more than $30,000 in upgrades and more than $35,000 in labor above and beyond the contract price of $230,000. The alleged increases in the contract price because of changes to the plans and specifications were never put in writing. The parties agree that the Youngs paid Liggett $230,000, but refused to pay any amount above and beyond that price.

On April 2, 2001, Tri–County Builders sued Liggett for payment of materials supplied for the construction of the Youngs' residence. On May 22, 2001, Liggett filed a third-party complaint against the Youngs, arguing that the Youngs had failed to pay Liggett for the materials. On July 17, 2001, the Youngs filed a counterclaim against Liggett, claiming that the construction of the house was defective.

On August 14, 2003, the Youngs filed a motion for partial summary judgment against Liggett on his third-party complaint, arguing that he was not entitled to payment because the construction contract required any changes to the contract price to be made in writing. Liggett's affidavit in response to the motion provided, among other things, as follows:

3. At the time said contract was entered into, [Dean] was serving as [Liggett's] personal attorney, and [Dean] assured [Liggett] that there would be no problems as a result of [Dean's] dual status as [Liggett's] attorney and party to said contract.

4. [Liggett] informed [Dean] that he was not set up to put all requests for extra work or work change orders into writing (as required in the pre-printed form [Dean] was using), and [Dean] agreed that said extra work or changes could be authorized verbally.

5. [Dean] then added Subparagraph (b) in Paragraph 12 of said contract....

Appellant's App. p. 58–59. On November 4, 2003, the trial court granted the Youngs' motion, finding that Liggett could not recover payment because there were no written change orders authorizing the extra work that Liggett had performed. Thus, the partial summary judgment disposed of Liggett's third-party complaint against the Youngs but did not dispose of the Youngs' counterclaim against Liggett for defective workmanship.

On March 23, 2004, Liggett advised the trial court that the Youngs had changed their cause of action against him from one based upon negligent acts and omission to one based upon an alleged breach of the contract.[1] Liggett moved to amend his answer to respond to the contract claim, and the trial court granted his motion on March 24, 2004. Liggett's amended answer raised new affirmative defenses, including unconscionability resulting from Dean entering into a contract with his client in violation of Professional Conduct Rule 1.8, illegality based upon Dean's violation of Rule 1.8, and unjust enrichment.

On February 2, 2005, after deposing the Youngs, conducting other discovery, and again amending his answer, Liggett filed a motion for summary judgment *on his third-party complaint*, alleging as follows: the partial summary judgment in favor of the Youngs should be reversed, the contract was void because of Dean's violation of Rule 1.8, and the contract permitted the parties to agree verbally to changes in the

1. Liggett apparently learned this information from his deposition of Dean, wherein Dean attested that he planned to pursue a contract claim against Liggett. Appellant's Br. p. 7.

contract price. Liggett's motion referred to Liggett's original affidavit designated in response to the Youngs' motion for partial summary judgment and to evidence discovered subsequent to the partial summary judgment order. The trial court interpreted Liggett's motion to be a motion to reconsider the partial summary judgment order in favor of the Youngs on Liggett's third-party complaint.

■ Following a hearing, the trial court denied Liggett's motion and granted final summary judgment in favor of the Youngs on all of Liggett's claims on October 17, 2005. The trial court concluded that only the evidence submitted as part of the prior summary judgment ruling could be considered. Thus, the trial court declined to consider the new evidence designated by Liggett in support of his motion for summary judgment. Additionally, the trial court found that the contract unambiguously required changes in the contract price to be made in writing and that Dean had not violated Rule 1.8 because the rule does not apply to "standard commercial transactions between the lawyer and the client...." Ind. Professional Conduct Rule 1.8(a) cmt. 1. Liggett now appeals.[2]

## DISCUSSION AND DECISION

### I. New Evidence

■ Liggett argues that the trial court erred in its approach to the portion of his motion for summary judgment seeking a reconsideration of the earlier partial summary judgment in favor of the Youngs. In particular, he contends that the trial court should have considered new evidence as it contemplated the earlier partial summary judgment against Liggett.

Liggett emphasizes that the trial court permitted him to amend his answer to the Youngs' counterclaim nearly one year before he filed his motion for summary judgment. His amended answer included new affirmative defenses—unconscionability, illegality, and quantum meruit—to which the new evidence is relevant. Indeed, Liggett notes that these issues are new and could not have been resolved by the trial court's partial summary judgment order. Because the trial court permitted him to amend his answer, according to Liggett, it must now permit him to introduce evidence supporting those affirmative defenses.

The fatal weakness in Liggett's argument is that, whereas the partial summary judgment order was entered on Liggett's *third-party complaint,* the "new issues" that have been raised since that time are relevant only to the Youngs' *counterclaim* against Liggett. That the trial court permitted Liggett to amend his answer to the Youngs' counterclaim in no way injects new issues or evidence into its consideration of Liggett's third-party complaint against the Youngs. Thus, even if the Youngs announced an intention to change their legal theory against Liggett from negligence to breach of contract, that in no way "contradicted," Appellant's Br. p. 26, the trial court's earlier partial summary judgment on Liggett's third-party complaint.

Additionally, Liggett notes that Indiana Trial Rule 54(B) permits a trial court to

---

**2.** Although the trial court's order does not resolve all of the claims, inasmuch as it does not affect the Youngs' counterclaim against Liggett, the trial court expressly found that "no just reason exists for delay in entering final judgment as to all of Liggett's claims against the Youngs," and the trial court did enter final judgment on those claims. Appellant's App. p. 43–44. Consequently, the judgment against Liggett is final and the order is not interlocutory. Ind. Trial Procedure Rules 54(B), 56(C).

revise an interlocutory order—including partial summary judgment—at any time:

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is *subject to revision at any time* before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added). Although we have been unable to find any Indiana cases on point, Liggett directs our attention to an opinion in which the Supreme Court of Tennessee considered a party's request to submit new evidence in support of a request to revise a grant of summary judgment:

> When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: (1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; (2) the importance of the newly submitted evidence to the movant's case; (3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; (4) the likelihood that the nonmoving party will suffer unfair prejudice; and (5) any other relevant factor.

*Harris v. Chern,* 33 S.W.3d 741, 744–45 (Tenn.2000).

For argument's sake, we will apply these factors to Liggett's situation, though we note that *Harris* is analyzing a Tennessee rule with no apparent Indiana analogue. With respect to the first and third factors—the movant's efforts to obtain the evidence in the first place and his explana-

tion for the failure to do so—Liggett argues that he was unable to introduce this evidence at the partial summary judgment stage because the Youngs, who had all of the relevant information, filed a motion for partial summary judgment before the information was revealed in discovery. But the Youngs did not file their motion immediately after Liggett filed his complaint; to the contrary, they waited over two years to seek partial summary judgment. Liggett could—and should—have sought an extension to conduct discovery, but he chose not to do so.

Liggett argues that he could not have known of the need to develop this evidence because the evidence had not yet been discovered at the time the Youngs filed their motion, but that is beside the point. It was incumbent upon him to provide evidence to defeat summary judgment, and if he had no such evidence, then he should have requested time to conduct discovery to develop that evidence. Having failed to do so, he may not apply this evidence retrospectively, regardless of its "importance" to his case. *Harris,* 33 S.W.3d at 745. He is not entitled to a second bite of this apple.

Moreover, we agree with the trial court that if we were to permit Liggett to inject new evidence into a reconsideration of a prior summary judgment motion, Trial Rule 56 would have little or no remaining substance:

> 4. Trial Rule 56 sets forth the manner and method of filing a response thereto. The party opposing a motion for summary judgment must designate his evidence in opposition within thirty (30) days of service of the motion. The responding party must also designate to the Court each material issue of fact which precludes entry of summary judgment and such designation must occur

within the same thirty (30) day time period.

5. Liggett's request for this Court to vacate its prior grant of summary judgment is based upon evidence designated by Liggett through his filings on February 2, 2005, more than a full year after the entry of the partial summary judgment. Liggett terms this proferred [sic] evidence as being "newly developed evidence"; however, Liggett provides no reason why such proferred [sic] evidence could not have been presented to the Court within the time constraints of Trial Rule 56 except to indicate that depositions had not been taken prior to the Court's entry of partial summary judgment. Trial Rule 56(F) provides the procedure to obtain additional time to develop evidence to oppose a motion for summary judgment; however, Liggett chose to not avail himself of that procedure.

6. This Court has found no authority, and Liggett has provided none, that would allow a party to designate "newly developed evidence" in an effort to circumvent the specific requirements of Rule 56 of the Indiana Rules of Trial Procedure.

7. If the Court were to consider "newly developed evidence" to overturn a grant of partial summary judgment, the provisions of Trial Rule 56 would be rendered totally ineffective with respect to partial summary judgment. Trial Rule 56(D) specifically provides that those matters determined on partial summary judgment are "deemed established, and the trial shall be conducted accordingly." To allow a party to attack a partial summary judgment after it has been granted by designating further evidence and raising additional issues would effectively nullify the provisions of Trail [sic] Rule 56.

Appellant's App. p. 36–37. Ultimately, therefore, we conclude that the trial court properly refused to consider Liggett's newly-proffered evidence as it contemplated its prior partial summary judgment order in favor of the Youngs.

## II. Reconsideration of Partial Summary Judgment Order

Liggett next argues that even if the trial court considers only the evidence that was available to it at the time it considered the Youngs' motion, it should conclude that it erred in granting partial summary judgment in favor of the Youngs. In particular, he argues that: (1) the contract is void because it violates public policy, and (2) the contract is ambiguous and should be construed against Dean, who drafted it.

As we consider these arguments, we note that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); see also T.R. 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a

trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

### A. Public Policy

▪ Liggett first argues that the contract is void because it violates public policy.[3] Specifically, he argues that in executing the contract, Dean violated Professional Conduct Rule 1.8(a).

Rule 1.8(a) restricts an attorney's ability to enter into a business transaction with a current client:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client,

to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Here, the evidence designated by Liggett in response to the Youngs' motion established the following with respect to the relationship and transaction between Dean and Liggett:

2. At the time said contract was entered into, [Dean] was serving as [Liggett's] personal attorney, and [Dean] assured [Liggett] that there would be no problems as a result of [Dean's] dual status as [Liggett's] attorney and party to said contract.

3. [Liggett] informed [Dean] that he was not set up to put all requests for extra work or work change orders in writing (as required in the pre-printed form [Dean] was using), and [Dean] agreed that said extra work or changes could be authorized verbally.

Appellant's App. p. 58–59.

Thus, Liggett's designated evidence establishes that he was a current client of Dean at the time they executed the contract. For argument's sake, we will accept that the evidence also establishes that Dean and Liggett entered into a business transaction that is covered by Rule 1.8.[4] Liggett, however, did not designate evi-

---

**3.** Liggett never asserted that the contract was void prior to the trial court's entry of partial summary judgment in favor of the Youngs. Indeed, his third-party complaint and "counterclaim to counterclaim" were based upon the contract, with Liggett insisting that he had performed his obligations thereunder.

**4.** We note, as did the trial court, that the comment to Rule 1.8 explicitly establishes that the rule does not apply to "standard commercial transactions between the lawyer and the client for products or services that the

client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities' services." Rule 1.8 cmt. 1. We need not decide whether the transaction between Dean and Liggett was a "standard commercial transaction" because Liggett did not provide sufficient evidence that Dean violated the rule, but we observe that this situation is sufficiently novel that it is not a foregone conclusion that Rule 1.8 even applied to this transaction.

dence establishing Dean's failure to: (1) ensure that the transaction and terms were in writing and fair, reasonable, understandable, and fully disclosed to Liggett; (2) advise Liggett in writing of the desirability of seeking independent counsel and to give Liggett an opportunity to do so; or (3) obtain Liggett's written informed consent to the transaction. Under these circumstances, there is insufficient evidence in the record establishing a genuine issue of material fact with respect to whether Dean's conduct violated Rule 1.8(a). Consequently, the trial court properly concluded that the contract was not void for this reason.

### B. Ambiguity

■ Finally, Liggett argues that the contract is ambiguous and should be construed against Dean, who drafted it. The construction of a written contract is a pure question of law. *S.C. Nestel, Inc. v. Future Constr., Inc.*, 836 N.E.2d 445, 449 (Ind.Ct.App.2005). The unambiguous language of a contract is conclusive and binding on the parties and the court, and the parties' intent is determined from the four corners of the document. *Id.* We will neither construe unambiguous provisions nor add provisions not agreed upon by the parties. *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind.Ct.App.2003).

■ If, however, the language of the contract is ambiguous, its meaning is determined by extrinsic evidence and its construction is a matter for the factfinder. *Nestel*, 836 N.E.2d at 449–50. An ambiguous contract will be construed against the party that drafted it. *Dick Corp.*, 783 N.E.2d at 374. The terms of a contract are not ambiguous simply because a controversy exists between the parties concerning the proper interpretation of the language. *Id.*

■ The contract is to be read as a whole when trying to ascertain the parties' intent, and we will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Nestel*, 836 N.E.2d at 450. The court must accept an interpretation of the contract that harmonizes its provisions, as opposed to one that causes the provisions to conflict. *Id.*

Liggett focuses on paragraph 12(b) of the contract, which provides that the purchase price is "subject to changes which may from time to time be made following construction [sic] between builders and owners, and, where necessary, following consultation with Owners' construction/mortgage lenders." *Id.* p. 34. Both parties essentially admit that there is an ambiguity in the first phrase of the paragraph, and both agree that it should read as follows: the purchase price is "subject to changes which may from time to time be made following *consultation* between builders and owners, and, where necessary, following consultation with Owners' construction/mortgage lenders."

Liggett argues that interpreting paragraph 12(b) in this way causes it to conflict with paragraph 8, which provides as follows:

Owner may order extra work or make changes by altering, adding to, or deducting from the work described in the initial plans and specifications attached hereto; PROVIDED, HOWEVER, that before such work or changes are made, the adjustment—upward or downward—of the contract price hereunder to take account of such work or changes shall first be agreed to in writing by the parties hereto.

Appellant's App. p. 33–34. Liggett insists that although paragraph 8 requires changes to the contract price to be made in writing, paragraph 12(b) permits them to

be made orally. This inconsistency, he argues, should lead us to consider extrinsic evidence regarding Dean's alleged representations to Liggett.

To the contrary, however, we agree with the trial court that

nothing in paragraph 12(b) is in any way inconsistent with the provisions of paragraph 8.... It is clear that paragraph 8 requires that any extra work or changes which would affect the contract price must be agreed to in writing by the parties. No other provision of the contract (including paragraph 12[b]) is inconsistent with that provision; therefore, there is no ambiguity.

Appellant's App. p. 38–39. Indeed, paragraph 12(b) permits a modification of the contract price following consultation with owners and lenders but does not specify how the modification must take place. To answer that question, we turn to paragraph 8, which requires that any modifications to the contract price be made in writing. Contrary to Liggett's argument, interpreting the contract in this way does not render paragraph 12(b) meaningless, inasmuch as paragraph 12(b) explicitly permits a modification of the contract price under certain conditions. Interpreting the contract in this way enables both paragraphs to retain meaning and avoids writing in an entirely new provision permitting oral modification of the contract price.

Liggett also argues that the contract is ambiguous because there were no "plans and specifications," Appellant's App. p. 32, for the construction attached to the contract even though the document described the plans and specifications as Exhibits A and B. Thus, according to Liggett, although paragraph 8 requires changes to "the initial plans and specifications" to be made in writing, *id.* p. 33, it was impossible for such changes to be made because the documents were not attached. Unfor-

tunately for Liggett, however, his third-party complaint explicitly states that the Youngs "made and requested certain changes in the specifications and construction of their residence." Appellant's App. p. 24. Moreover, in his "Counterclaim to Counterclaim," Liggett avers that he had "completed all of his obligations required by said contract...." *Id.* p. 72. As pointed out by the Youngs, Liggett could not have completed his contractual obligations if those obligations had never been defined. Consequently, it is apparent to us that Liggett has admitted that, although the plans and specifications may not have been attached to the contract, there is no dispute over the identity or content of the plans and specifications. Thus, we agree with the trial court that the lack of Exhibits A and B does not render the contract ambiguous: "When the parties present to the Court no dispute as to the plans and specifications which were incorporated into the written agreement by reference but were not physically attached, there is no basis for determining the written contract to be ambiguous." Appellant's App. p. 38.

Ultimately, we conclude that the trial court properly found that it could not consider new evidence, that the contract was not void, that the contract was not ambiguous, that the Youngs do not owe Liggett any more money under the contract, and that partial summary judgment in the Youngs' favor was warranted.

The judgment of the trial court is affirmed.

MAY, J., concurs.

SULLIVAN, J., concurs in part and dissents with opinion.

SULLIVAN, Judge, dissenting in part.

I concur, albeit with some degree of hesitation, as to all parts of the majority opinion *except* as to Part II. A.

In my view, there is a large question as to whether Dean's drafting of the construction contract and the manner in which is was phrased violated Professional Conduct Rule 1.8(a).

To be sure and without question, Dean, as Liggett's attorney, entered into a "business transaction" with Liggett. The contract formalizing that transaction was not transmitted "in a manner that [could] be reasonably understood by [Liggett]." It is certainly reasonable that Liggett could construe the contract to authorize additional changes by consultation, and notwithstanding Paragraph 8 of the contract, such changes would be valid and enforceable without a specific writing for a specific change. Even if otherwise, Dean, as the attorney and the person in a superior position, was required to advise of the "in writing" provision of Paragraph 8 as controlling over the "consultation" language of Paragraph 12(b).

Procedural niceties aside, basic fairness, as well as Professional Conduct Rule 1.8(a),[5] dictate that the Youngs not benefit, as a matter of law, from the contract as interpreted by the trial court and by the majority opinion here. Conversely, Liggett should not be denied, as a matter of law, fair and equitable compensation for the labor and materials which were provided to enhance the value of the residence constructed.

---

5. As does the majority, I too, would not hold that the transaction between Dean and Liggett, under these circumstances, constitutes a *"standard* commercial transaction" so as to be an exception to Rule 1.8. (Emphasis supplied).