**James NIEZER, Appellant–Defendant/Counterclaim Plaintiff,**

v.

**TODD REALTY, INC., Appellee–Plaintiff/Counterclaim Defendant.**

No. 43A04–0903–CV–122.

Court of Appeals of Indiana.

July 23, 2009.

Publication Ordered Sept. 1, 2009.

Jeremy N. Gayed, Patrick G. Murphy, Barrett & McNagny LLP, Fort Wayne, IN, Attorneys for Appellant.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch & Morgan LLP, Syracuse, IN, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge.

James Niezer appeals a grant of summary judgment and an award of attorney fees in favor of Todd Realty in Todd Realty's breach of contract action against Niezer pertaining to a real estate listing contract between the two parties.

We affirm.

The facts favorable to Niezer, the non-moving party, are that Niezer engaged the services of Todd Realty to sell property owned by Niezer on Lake Wawasee in Indiana. The subject property is a lakefront lot with 40 feet of lake frontage and included a cottage built in 1920 with approximately 1400 square feet of living space. This property was not Niezer's primary residence. Working with Todd Realty agent Becky Fox, Niezer entered into a listing contract (the Listing Contract) with Todd Realty on October 15, 2006. The contract, which was effective from October 15, 2006 to midnight on April 15, 2007, contained the following relevant provisions, with "Broker" referring to Todd Realty and "Seller" referring to Niezer:

List Price: $699,900.00 Possession: negotiable

* * * * *

(A) **EXCLUSIVE LISTING.** The parties understand and agree that this is an exclusive right to sell, option, exchange or lease listing, and Broker shall be entitled to the commission hereinafter established which shall be payable upon the occurrence of any of the following events:

* * * * *

(2) at the time Seller, Broker, or any other real estate licensee secures a buyer or lessee ready, willing and able to purchase, option, exchange or lease the Property for such price and terms as specified, or such other price or terms as Seller may accept[.]

* * * * *

(C) **COMMISSION IS LIEN; ATTORNEY FEES.** For purposes of this contract, the parties understand and agree that Broker's commission is deemed to be a share of the purchase money received by Seller, and Broker shall have a lien on the funds and a lien upon the Property until the commission is paid. If any action is filed in relation to this Listing Contract, the unsuccessful party shall pay to the successful party a reasonable sum for the successful party's attorney's fees and court costs.

*Appellant's Appendix* at 220–21.

On April 4, 2007, Fox received an offer on Niezer's property from Joe Moody. Moody offered to pay $650,000 for Niezer's property, including a shore station, with Moody to take possession on the proposed May 6, 2007 closing date. Niezer countered with an offer to sell for $699,900, excluding the shore station, and buyer possession "15 days following closing[.]" *Id.* at 301. In response, on April 7, 2007, Moody submitted a second offer, this one

for $680,000, including the shore station, and providing for possession at closing. Niezer rejected this offer and did not submit a new counteroffer. On April 9, 2007, Moody submitted a third offer, which matched the list price, i.e., $699,000, excluded the shore station, and stated that possession would be on the proposed closing date of May 8, 2007. The offer expired at 7 p.m. that evening. Niezer informed Fox that the proposed closing date did not provide sufficient time for him to get into another property. Fox proposed that Niezer submit a counteroffer setting a later date of possession. Fox prepared a counteroffer sheet for Niezer's signature, setting possession at fifteen days following closing and further providing that the offer was "contingent upon seller finding a suitable property before closing[.]" *Id.* at 315. Niezer refused to sign the counteroffer sheet, telling Fox that he needed more time to consider it than was permitted by the 7 p.m. expiration. Fox prepared an amendment to the third Moody offer that would have extended the expiration of the offer from 7 p.m. on April 9 to 3 p.m. on April 11. Niezer again refused to sign it, telling Fox that he wanted to review it with his attorney. Niezer admitted later during a deposition that he did not recall why he did not sign the counteroffer that merely extended the deadline for responding to Moody's third offer.

Later on the evening of April 9, Fox received another offer to purchase Niezer's property. This offer was from Todd and Bethany Lassus. They offered to pay $700,500 with a closing date of June 29, 2007 and the buyers to take possession at closing. The offer was to expire at 3 p.m. on April 16. Ultimately, Niezer rejected the Lassuses' offer. Niezer met with Fox on April 10 and discussed the situation. Niezer noted that he had received two offers at or above the asking price and expressed the concern, "I must be selling

my property too cheaply." *Appellant's Appendix* at 5. Fox asked him if he wanted to change the price and Niezer responded that he thought he should. Fox prepared a counteroffer to the Lassus offer that included the following terms:

1. Purchase price to be:

2. This offer is contingent upon seller finding a suitable property by May 15, 2007, seller's new property would close on or after June 29, 2007 or closing [Niezer's] property and the seller's new property at a time that both seller and buyer agree upon.

*Id.* at 324. Fox stated that Niezer did not want her to include a purchase price in the counteroffer. Niezer did not sign or take any other action with respect to this counteroffer.

On July 23, 2007, Todd Realty filed a complaint for damages against Niezer, alleging that Todd Realty had submitted to Niezer two separate offers to purchase his property that met the price and conditions terms set out in the Listing Contract. Todd Realty sought damages in the amount of its projected commission, i.e., $35,025. Niezer answered by denying the allegations that Todd Realty had procured offers that complied with the listing terms, and also asserted a counterclaim for attorney fees, alleging that Todd Realty's claim was "frivolous, meritless, unreasonable and/or groundless[.]" *Id.* at 4. Todd Realty answered the counterclaim in denial.

On September 12, 2008, Niezer submitted a motion for summary judgment. On October 14, 2008, Todd Realty submitted a cross-motion for summary judgment. Following a January 9, 2009 hearing, the trial court granted Todd Realty's motion and denied Niezer's. Following another hearing, the trial court granted Todd Realty's request for attorney fees and ordered

Niezer to pay attorney fees in the amount of $10,183,70. Niezer appeals both rulings.

1.

Niezer contends that the trial court erred in granting Todd Realty's motion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled:

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. A factual issue is "genuine" if it is not capable of being conclusively foreclosed by reference to undisputed facts. Although there may be genuine disputes over certain facts, a fact is "material" when its existence facilitates the resolution of an issue in the case.

When we review a trial court's entry of summary judgment, we are bound by the same standard that binds the trial court. We may not look beyond the evidence that the parties specifically designated for the motion for summary judgment in the trial court. We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity. A party appealing from an order granting summary judgment has the burden of persuading us that the decision was erroneous.

A grant of summary judgment may be affirmed upon any theory supported by the designated evidence.

*Van Kirk v. Miller,* 869 N.E.2d 534, 539–40 (Ind.Ct.App.2007) (citations omitted), *trans. denied.* The fact that the parties filed cross-motions for summary judgment does not affect our standard of review. *Turner v. Boy Scouts of America,* 856 N.E.2d 106 (Ind.Ct.App.2006).

 In reviewing the propriety of this grant of summary judgment, we are called upon to construe the meaning of the Listing Contract. The construction of a contract and an action for its breach are matters of judicial determination. *Fratus, et al. v. Marion Cnty. Sch. Bd. of Trustees,* 749 N.E.2d 40 (Ind.2001). Construction of a written contract is generally a question of law for which summary judgment is particularly appropriate. *Trustcorp Mortgage Co. v. Metro Mortgage Co., Inc.,* 867 N.E.2d 203 (Ind.Ct.App.2007). Our standard of review in such cases is de novo. *Id.* The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Gatto v. St. Richard Sch., Inc.,* 774 N.E.2d 914 (Ind.Ct.App.2002). When construing a contract, unambiguous contractual language is conclusive upon the parties and the courts. *Trustcorp Mortgage Co. v. Metro Mortgage Co., Inc.,* 867 N.E.2d 203. If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument. *Id.*

 If, however, a contract is ambiguous or uncertain, its meaning is determined by extrinsic evidence and its construction is a matter for the fact-finder. *S.C. Nestel, Inc. v. Future Constr., Inc.,* 836 N.E.2d 445 (Ind.Ct.App.2005). When interpreting a written contract, the court should attempt to determine the parties' intent at the time the contract was made, which is ascertained by the language used to express their rights and duties. *Id.* The contract is to be read as a whole when trying to determine the parties' intent.

*Id.* The court will make every attempt to construe the contractual language such that no words, phrases, or terms are rendered ineffective or meaningless. *Id.* The court must accept an interpretation of the contract that harmonizes its provisions as opposed to one that causes its provisions to conflict. *Id.*

This case turns upon the possession term of the Listing Contract. For all intents and purposes, there were only two terms of sale specified by Niezer to sell his property: price and date of possession. Pursuant to the Listing Contract, the selling price was $699,900. Thus, according to paragraph (A)(2) of the Listing Contract, Todd Realty was "entitled to the commission" if, with respect to this term, it "secure[d] a buyer ... ready, willing, and able to purchase" Niezer's property for at least $699,900. *Appellant's Appendix* at 220. Niezer does not dispute that this condition was met. The second term of sale, and the one around which this case revolves, is date of possession. Pursuant to the Listing Contract, that term was designated as "negotiable." *Id.* "Negotiable", by definition, is an ambiguous term in that it does not identify a date certain or a specific period of time following some specified event at which possession will change. Rather, it indicates that the timing of the transfer of possession to the buyer was a term upon which Niezer was willing to arrange or arrive at "through conference, discussion and compromise." Merriam Webster's Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/choke[1] (last visited on July 7, 2009). The difficulty in the instant case is, what does this imply with respect to Todd Realty's duty under the Listing Contract to secure a buyer who satisfies this condition of the listing terms?

As indicated above, this term implied reciprocal conduct on Niezer's part. One can hardly conference, discuss, and compromise with oneself. Thus, the "negotiable" term of possession carried with it implications pertaining to both parties. In order to meet its obligation, Todd Realty was required to secure a buyer who was genuinely flexible on the date of possession and willing to negotiate in good faith with Niezer in arriving at a mutually satisfactory date. Doing such would be an exercise in futility, however, if Niezer was not willing to perform his part of that process, which likewise was to negotiate in good faith to arrive at a mutually satisfactory date for transfer of possession.

In his first offer, Moody proposed a purchase price of less than the list price and a possession date the same as the proposed closing date, i.e., May 8, which was approximately one month hence. Niezer's counteroffer reiterated the list price as the sale price, and proposed that the date of possession would be fifteen days after the closing date. Moody's second offer increased the price term but did not alter the date of possession from his first offer. Niezer did not respond to that offer other than to reject it. Moody's third offer increased the price term to the list price, but did not change the proposed date of possession from the first offer. Niezer rejected that offer, and thereafter refused to sign a counteroffer sheet prepared by Fox that would have extended the date of possession to fifteen days after closing, assuming Niezer could find suitable accommodations within that time frame.

At about that time, on April 9, Fox delivered another offer to Niezer, this one by the Lassuses. The Lassuses offered more than the list price and proposed a closing date more than two and one-half months hence, on June 29, 2007. The offer remained open until April 16, 2007. Niezer rejected this offer. After Fox and

Niezer discussed the situation on April 10, Fox prepared a counteroffer which, while leaving the price term open at Niezer's request, proposed the following date-of-possession term: Contingent upon Niezer finding a suitable property by May 15, 2007, "seller's new property would close on or after June 29, 2007 or closing [Niezer's] property and the seller's new property at a time that both seller and buyer agree upon." *Appellant's Appendix* at 324. Niezer refused to sign the counteroffer sheet and took no further action with respect to the Lassuses' offer.

We reiterate that the answer to the question of whether Todd Realty secured a buyer who satisfied the date-of-possession term of the Listing Contract must be a function both of the prospective buyer's willingness to negotiate with Niezer in good faith on that point, and of Niezer reciprocating by negotiating that same matter in good faith. Arguably, Moody did not meet this condition because although he submitted three separate offers, he did not alter his original offer of taking possession on May 8, the date of closing. It is noteworthy here that Niezer did in fact negotiate that point by proposing an alternate date of possession. Niezer did not budge from his original proposal for a fifteen-day period after closing before Moody would take possession. This does not mean, however, that Niezer failed to negotiate the matter in good faith. Certainly, he was entitled to remain firm on his original proposal. The facts before us reveal that Niezer did in fact negotiate in good faith with Moody on the possession term. Niezer did not, however, do the same with the Lassuses.

After receiving the offer from the Lassuses, Niezer conferred with Fox and expressed concern that he had listed the property at too low a price. Based upon that discussion, Fox prepared a counteroffer for Niezer's signature. Consistent with Niezer's expressed wishes, Fox did not include a price term. In fact, the only term included in the counteroffer was a somewhat confusing set of proposed closing dates and contingencies, with no mention made of change of possession. The counteroffer was tendered for Niezer's signature on April 10, but he did not sign it and no further action was taken with respect to the Lassuses. As the foregoing reflects, by the time he received the Lassuses' offer, Niezer was having doubts about the original asking price. Although this is perhaps understandable, it is beside the point with respect to the question whether Fox and Todd Realty had satisfied their obligation under the contract to secure a buyer who was willing to purchase the property for the price and terms specified and thereby satisfied the contractual requirements for collecting the fee set out therein.

■■■ The Lassuses offered to purchase Niezer's property for more than the list price, and their initial offer on the possession term was relatively generous from Niezer's perspective. This certainly permits the inference that they would have been willing to negotiate on that term. In any event, as noted previously, a party cannot negotiate unilaterally. Niezer refused to counteroffer or otherwise negotiate possession with the Lassuses, thereby thwarting the negotiating process.[1] "[I]t

---

1. We note here the contention in Niezer's appellate brief that "[g]ood faith negotiation does not require compromise" and the duty to negotiate in good faith "is satisfied even when there is a refusal to change the terms of the initial offer." *Appellant's Brief* at 22. As indicated previously, this is undoubtedly true, but the fact remains that Niezer did not offer any proposal at all to the Lassuses on the possession term. He merely rejected their proposal. At that point in the process, Niezer had placed no "initial offer" on the table with

is the rule in Indiana that 'a party may not rely on the failure of a condition precedent to excuse performance where that party's action or inaction caused the condition to be unfulfilled.'" *Hamlin v. Steward,* 622 N.E.2d 535, 540 (Ind.Ct.App.1993) (quoting *Kokomo Veterans, Inc. v. Schick* 439 N.E.2d 639, 645 (Ind.Ct.App.1982), *trans. denied* ). *See also Ind. State Highway Comm'n v. Curtis,* 704 N.E.2d 1015, 1019 (Ind.1998) ("[t]he Hamlin doctrine prevents a party from acts of contractual sabotage or other acts in bad faith by a party that cause[s] the failure of a condition"). The trial court correctly determined that Todd Realty satisfied the conditions precedent to payment under the Listing Contract.

### 2.

Niezer contends the trial court erred in awarding attorney fees to Todd Realty. The Listing Contract provided that in any action filed with respect to the Listing Contract, "the unsuccessful party shall pay to the successful party a reasonable sum for the successful party's attorney's fees and court costs." *Appellant's Appendix* at 21. This provision clearly covers the instant situation. It appears that Niezer's argument against the award of attorney fees is premised upon its claim that the trial court erred in entering summary judgment in favor of Todd Realty in the first place. Having failed to prevail on the preliminary argument, Niezer necessarily fails as to its derivative.

Judgment affirmed.

NAJAM, J., and VAIDIK, J., concur.

### ORDER

Appellant James Niezer, by counsel, has filed a Motion to Publish Memorandum Decision.

respect to the possession term for the Lassuses to either accept or reject. This is the

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Motion to Publish Memorandum Decision is GRANTED. This Court's opinion handed down in this cause on July 23, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

NAJAM, FRIEDLANDER, VAIDIK, JJ., concur.

quintessence of failing to negotiate on that point.