

FILED
Nov 27 2013, 5:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ERIC S. PAVLACK**
**COLIN E. FLORA**
Pavlack Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**BRYAN H. BABB**
**DOUGLAS R. BROWN**
**JOEL T. NAGLE**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DIANE S. BROWN BELL, on behalf of herself and all others similarly situated, )<br><br>Appellant, )<br><br>vs. )<br><br>THE BRYANT COMPANY, INC., )<br><br>Appellee. ) | No. 49A04-1305-PL-210 |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
Cause No. 49D11-1205-PL-21281

**November 27, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Diane S. Brown Bell appeals the grant of a motion to dismiss filed pursuant to Indiana Trial Rule 12(B)(6), dismissing her class action complaint against The Bryant Company, Inc. (Bryant) on grounds that it failed to state a claim upon which relief could be granted. Bell presents two issues for review, which we restate as follows:

1. Did the trial court err in granting Bryant's motion to dismiss?

2. Does Bell's complaint state a claim that may be certified as a class action?

We reverse and remand.

As we will explain below, in addressing this appeal, we will take as true the facts alleged in Bell's complaint. So viewed, Bell owned rental property (the Property) in Indianapolis, Indiana. On April 13, 2010, Bell and Bryant entered into a written property management agreement (the Agreement), under which Bell hired Bryant as the "sole and exclusive" leasing and managing agent for the Property. *Appellant's Appendix* at 17. Locating a tenant for the Property was one of Bryant's responsibilities under the Agreement. Bryant was also authorized under the Agreement to execute leases for the Property on behalf of Bell.

Approximately two months after the Agreement was executed, Bryant procured a tenant, Wendy L. Winkle, who subsequently signed a lease (the Lease) to rent the property. Pursuant to the Lease, Winkle was obligated to pay $1800 per month in rent. The lease also called for Winkle to remit to Bryant a $50 late charge in the event Winkle's rent payment was more than 6 days late, a $35 fee for each dishonored check, and a $45 fee in the event that Winkle, without good reason, changed the date of one of the two inspections per year called

2

for under the lease. Winkle's original lease expired on June 30, 2011, but effective May 11, 2011, the lease was extended to a second annual term, which ended on June 30, 2012. During the course of Winkle's tenancy, she occasionally paid $50 late fees to Bryant. In May 2012, Bell learned that Bryant had kept late fees that Winkle had paid. Bell sent a letter to Bryant demanding payment of the late fees that Bryant had retained. Bryant refused.

In response, Bell filed the present class action on behalf of herself and on behalf of "a proposed class of similarly-situated [sic] current and former property owners who entered into agreements with The Bryant Co., Inc. to lease and manage their properties", alleging breach of contract and conversion. *Id*. at 7. Bryant filed an answer denying the allegations in Bell's complaint and asserting a counterclaim under the theories of breach of contract and, in the alternative, recovery under the equitable theory of promissory estoppel.

Bell contends the trial court erred in granting Bryant's motion to dismiss, which was filed under T.R. 12(B)(6). We note, however, that Bryant filed this motion after filing its answer. "A [T.R.] 12(B)(6) motion filed after an answer will be treated as a motion for judgment on the pleadings under [T.R.] 12(C)." *DeHart v. Anderson*, 383 N.E.2d 431, 436, 178 Ind. App. 581, 588 (1978). Therefore, notwithstanding the fact that the parties and the trial court below argued the motion to dismiss under T.R. 12(B)(6), we review it pursuant to the standard applicable to T.R. 12(C).

We review *de novo* a trial court's ruling on a T.R. 12(C) motion for judgment on the pleadings. *Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784 (Ind. 2012), *cert. denied*, 133 S.C. 233. When reviewing a T.R. 12(C) motion, we consider any facts of which

we may take judicial notice. *Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192 (Ind. Ct. App. 2013). Also, we accept as true the well-pleaded material facts alleged in the complaint, and base our ruling solely on the pleadings. *Murray v. City of Lawrenceburg,* 925 N.E.2d 728 (Ind. 2010). "The 'pleadings' consist of a complaint and an answer, a reply to any counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint." *Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d at 1196 (quoting *Waldrip v. Waldrip,* 976 N.E.2d 102, 110 (Ind. Ct. App. 2012)). "Pleadings" also consist of any written instruments attached to a pleading. *See* T.R. 10(C) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). A motion for judgment on the pleadings under T.R. 12(C) should be granted "only where it is clear from the face of the complaint that under no circumstances could relief be granted." *Murray v. City of Lawrenceburg,* 925 N.E.2d at 731 (quoting *Forte v. Connerwood Healthcare, Inc.,* 745 N.E.2d 796, 801 (Ind. 2001)).

The business relationship between Bell and Bryant, which included the allocation of the late fees for late rent payments, was governed by the Agreement. Therefore, we must examine its provisions to determine whether Bell stated a claim for breach of contract that would survive a T.R. 12(C) motion for judgment on the pleadings.

When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870 (Ind. Ct. App. 2011). We attempt to determine the parties' intent at the time the contract was made, "which is ascertained by the language used to express their rights and duties." *Niezer v. Todd*

4

*Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009), *trans. denied*. We must first determine whether the contract's language is ambiguous. "[U]nambiguous contractual language is conclusive upon the parties and the courts." *Id.* In such a case, the parties' intent is determined from the four corners of the instrument. *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211. On the other hand, if a contract is ambiguous or uncertain, its meaning must be determined by examining extrinsic evidence – a task usually reserved for the fact-finder. *Id.* In the present posture, however, we are asked to review such evidence as may be found in the pleadings and documents attached thereto pursuant to T.R.10(C) and determine whether the court correctly decided as a matter of law that Bell was not entitled to recovery.

As a final matter, we note that the order dismissing Bell's complaint did not indicate the basis for the dismissal. "[W]hen a trial court grants a motion to dismiss without reciting the grounds relied upon, it must be presumed upon review that the court granted the motion to dismiss on all the grounds in the motion." *Godby v. Whitehead*, 837 N.E.2d 146, 149 (Ind. Ct. App. 2005), *trans. denied*. Accordingly, our review includes an examination of the complaint and the arguments in Bryant's motion to dismiss.

Bryant's motion to dismiss was premised upon the following three arguments: (1) Bell did not adhere to the termination-notice date set out in the Agreement and consequently may not pursue a claim for breach of contract; (2) because the collection of late fees is "not customarily a part of the usual leasing services performed by a property manager" within the meaning of the Agreement, *Appellant's Appendix* at 19, Bryant was entitled to receive additional compensation therefor, including the entire amount of late fees paid by the renter;

5

and (3) the statement on the Lease to the effect that "Lessee will pay to agent … [a] late charge of Fifty Dollars ($50.00) if payment is more than six (6) days past due", *id.* at 24, indicates that Bryant was to retain the fee. We will address these arguments in turn.

In the memorandum in support of its motion to dismiss, Bryant stated: "As the Bryant Co. demonstrates in its Opposition to Bell's Motion to Dismiss, the Management Agreement unambiguously sets forth a termination-notice date, which Bell failed to adhere to." *Id.* at 58. The gist and relevance of this argument is not apparent to us. Regardless, we need not consider it because Bryant has not made this argument on appeal.

Bryant's second argument before the trial court in favor of dismissal was that the Agreement provided that Bryant was entitled to receive additional compensation for activities "not customarily a part of the usual leasing services performed by a property manager" within the meaning of the Agreement. *Id.* at 19. Bryant contended that the collection of late fees was not customarily a part of typical leasing services, and therefore it was entitled to receive additional compensation for performing that task, which in this case included retaining the entire amount of late fees paid by Winkle. We can find nothing in the Agreement that either stipulates or refutes the notion that the collection of late rent is a customary part of leasing services. Indeed, the parties provide scant argument on this question. According to Bell, it is something akin to a truism: "[t]here can be no question that occasionally receiving a tenant's rent payments late is a common part of the services customarily a part of the usual leasing services performed by a property manager." *Appellant's Brief* at 17. Bryant does not dispute this. In fact, Bryant does not address the question at all. It seems, therefore, that we are left

6

to decide this matter based upon Bell's assertion and our own common sense. Upon those considerations, we agree with Bell. Accordingly, Bryant was not entitled to retain the entirety of late payment fees on the basis that it was compensation for services not customarily performed by a property manager.

The third and final basis argued before the trial court was that the Lease allocated late-fee payments in their entirety to Bryant when it provided: "Lessee will pay to agent … [a] late charge of Fifty Dollars ($50.00) if payment is more than six (6) days past due". *Appellant's Appendix* at 24. Bryant claims this provision reflects the parties' intent that Bryant had a right to retain the full amount of late charges collected from Winkle.

When construing the meaning of a contract, we read it as a whole and seek a meaning that harmonizes its provisions, not one that causes them to conflict. *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211. The provision of which the above-quoted language is but a small portion reads in its entirety as follows:

> Lessee will pay to Agent, at [a post office box in Indianapolis], as rent for said premises, the sum of  $1800.00 per month payable in advance on the 25th day of each month, by check or money order (cash cannot be accepted), and a late charge of Fifty Dollars ($50.00) if payment is more than six (6) days past due; and in addition, a late charge of Fifty Dollars ($50.00) for each additional month during which such installment remains unpaid. The imposition of each late charge, however, shall not be constituted as a waiver of such default nor prevent Agent from exercising any of the other rights and remedies granted hereunder. Lessee shall pay to Agent a Thirty-Five Dollar ($35.00) fee for each returned unpaid check. If a late payment results in a service charge being levied against the property by mortgagee or vendor, Lessee assumes the cost of said penalty.

*Appellant's Appendix* at 24. Pursuant to the foregoing provision, Winkle was to pay Bryant all fees associated with the rental. This included the fee for late payment, an additional fee

7

for payments that were more than one month late, a fee for returned, unpaid checks, and, of course the rent itself. Bryant concedes that the rent payment, although collected by Bryant, was the property of Bell, subject to the ten-percent fee retained by Bryant under the Agreement. Bryant contends, however, that the other fees listed in this provision were intended to go exclusively to Bryant.

The parties agree that the Lease is *in pari materia* with the Agreement. The latter governs the relationship between Bell and Bryant as principal and agent, while the former governs the relationship between Bell and Winkle as landlord and tenant. The provision to which Bryant cites is a part of the Lease, which allocates rights and responsibilities between Bell and Winkle, not Bell and Bryant, and not Bryant and Winkle. Bryant's status in the lease document is clearly delineated: "THIS LEASE, made this 21st day of June, 2010, between The Bryant Co., Inc., and/or its assigns, *Agent for Owner*, party of the first part, hereinafter called Agent, and Wendy L. Winkle, party of the second part, hereinafter called lessee [.]" *Id.* (emphasis supplied).

"Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former." *Demming v. Underwood,* 943 N.E.2d 878, 884 (Ind. Ct. App. 2011) (quoting *Smith v. Brown,* 778 N.E.2d 490, 495 (Ind. Ct. App. 2002)), *trans. denied.* "The basic theory of the agency device is to enable a person, through the services of another, to broaden the scope of his activities and receive the product of another's efforts, paying such other for what he does but retaining for himself any net benefit resulting from the work performed." Harold Gill Reuschlein & William A. Gregory,

8

*The Law of Agency and Partnership* § 1, at 3 (2d ed. 1990). In other words, an agent acts on behalf of its principal and for the principal's benefit. *See McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607, 611 (Ind. 1992) ("[u]nless otherwise agreed, an agent is subject to a duty to his *principal* to act solely for the benefit of his *principal*"). (Emphasis in original). We can find no language in the Lease, which we reiterate governs the relationship between Winkle and Bell, that constitutes an agreement that Bryant was acting on its own behalf in collecting from Winkle the fees set out above. Bryant's claim that the Agreement contains provisions to this effect is unavailing.

The Agreement provides that Bryant was to be paid: (1) a sum equal to ten percent of the gross rents collected by Bryant; (2) a seven-percent sales commission in the event that Bryant sold the property on behalf of Bell during the term of the Agreement; and (3) fees associated with the aforementioned performance of "any services not customarily a part of the usual leasing services performed by a property manager." *Appellant's Appendix* at 19. Of these, the third option provides the only plausible basis for Bryant's claim that it was entitled to retain fees associated with late payment of rent. We have already rejected this claim. Therefore, we find no basis in the Agreement or the Lease upon which Bryant was entitled to retain those fees in their entirety. Thus, with respect to Bell's claim that she was entitled to the late fees retained by Bryant, it is far from "clear from the face of the complaint that under no circumstances could relief be granted." *Murray v. City of Lawrenceburg*, 925 N.E.2d at 731 (quoting *Forte v. Connerwood Healthcare, Inc.,* 745 N.E.2d at 801). At a minimum, this means that the trial court erred in granting Bryant's motion for judgment on

the pleadings with respect to Bell's claim.

2.

Finally, we note that in the motion for judgment on the pleadings below, Bryant argued that Bell's class-action claim must fail because the class action may not be premised upon a case in which parol evidence is necessary to resolve individualized questions of law. On appeal, Bryant makes "[o]ne final point." *Appellant's Brief* at 9. It claims, "because the trial court never certified Bell's Class Action, Bryant's arguments related to dismissal of class action claims based on contractual ambiguity grounds are inapplicable. In like manner, Bell's argument under part 'III' of her brief is immaterial to the issue before this Court." *Id.* Bell disagrees, contending that because the trial court did not explain its decision to grant Bryant's motion for judgment on the pleadings, any argument in that brief upon which the trial court could have based its ruling must be addressed. It would be appropriate to resolve this issue on grounds of waiver because Bryant has failed to renew this argument upon appeal. If we were to do so, however, and the trial court did grant Bryant's motion on this basis, nothing would prevent the trial court from doing so again. Therefore, we will address the issue on its merits.

Bryant argued in its motion for judgment on the pleadings that Bell's complaint should be dismissed because "a class action cannot lie in a case involving parole [sic] evidence necessary to resolve individualized questions of law and fact as between numerous contracting parties [.]" *Appellant's Appendix* at 65. Bryant did not elaborate upon this contention beyond the above-quoted statement, and the statement was unsupported by

10

citation to authority. We presume this statement represents an argument that class certification is improper where there is an ambiguity in the contract upon which the lawsuit is based, because the resolution of the ambiguity would involve consideration of issues that would be individualized among the various members of the purported class.

T.R. 23 governs class action proceedings. In order to maintain a class action, a plaintiff must satisfy the four requirements of T.R. 23(A). Those requirements are:

> (A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

If the plaintiffs satisfied the four requirements of T.R. 23(A), they must then satisfy at least one of the requirements of T.R. 23(B). *See 7-Eleven, Inc. v. Bowens*, 857 N.E.2d 382 (Ind. Ct. App. 2006). The determination of whether an action is maintainable as a class action is committed to trial court's sound discretion, and it will be reviewed for an abuse of that discretion. *Associated Med. Networks, Ltd. v. Lewis*, 824 N.E.2d 679 (Ind. 2005). "The satisfaction of the requirements for class certification is a question of fact for the trial court." *7-Eleven, Inc. v. Bowens*, 857 N.E.2d at 388.

Considering the foregoing, it is apparent to us that in order to determine whether certification of the class here is appropriate under T.R. 23, the trial court will be required to consider matters beyond the pleadings. Accordingly, this could not provide a valid basis for

11

granting a T.R. 12(C) judgment on the pleadings in favor of Bryant. Therefore, judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

BAKER, J., and VAIDIK, J., concur.