## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 18 2018, 10:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James M. Hinshaw
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Speedway Corp., *Appellant-Defendant,* <br><br> v. <br><br> Wilson Real Estate II, LLC, *Appellee-Plaintiff* | April 18, 2018 <br><br> Court of Appeals Case No. 67A01-1709-SC-2089 <br><br> Appeal from the Putnam Superior Court <br><br> The Honorable T. Edward Page, Senior Judge <br><br> Trial Court Cause No. 67D01-1704-SC-202 |

**Crone, Judge.**

## Case Summary

[1] Speedway Corporation[1] appeals the small claims judgment ordering it to paint one of the parking lines in a parking lot owned by Wilson Real Estate II, LLC. Speedway argues that the trial court erred in interpreting the parties' easement agreement ("the Easement Agreement"). We agree, and therefore reverse.

## Facts and Procedural History

[2] Speedway and Wilson are commercial neighbors in Greencastle. Speedway owns a square parcel of real estate at the northeast corner of Indianapolis and Judson Roads, on which it operates a gas station and small convenience store. In 2011, Wilson, a real estate developer, purchased a real estate parcel with a strip center and a parking lot that forms an L shape around Speedway's property. Pursuant to a 1962 agreement, Speedway had easement rights to a portion of Wilson's parking lot that lies north and east of Speedway's parcel, and Speedway's delivery trucks and customers use Wilson's parking lot.

[3] Wilson and Speedway had disagreements about Speedway's use of Wilson's parking lot. Speedway filed a lawsuit against Wilson related to their dispute regarding Speedway's easement. In August 2013, while that case was pending appeal, Wilson and Speedway entered into a settlement agreement ("the Settlement Agreement"), in which Speedway agreed to pay Wilson $25,000 and "repave, once, the area enclosed by the hashed outline in the attached Exhibit

---

[1] Speedway states that it has been incorrectly identified in these proceedings and that its correct name is Speedway LLC.

A by placing asphalt blacktop over and filing any material potholes." Appellant's App. Vol. 2 at 11. Wilson agreed to grant "Speedway a permanent easement ('the Easement'), indicated and explained by the attached Easement Agreement labeled as **Exhibit B**, which has been executed simultaneously with this [Settlement] Agreement. *Speedway will be responsible for maintaining the Easement only as indicated and explained in the [Easement Agreement]*." *Id.* (italicized emphasis added). In addition, the parties agreed to release all claims against each other relating to the 1962 agreement, their dispute relating to the scope of their rights under that agreement, and the matters addressed in the pending lawsuit, which was dismissed.

[4] The Easement Agreement provides as follows:

> 1. EASEMENT. Wilson hereby grants to Speedway, … a perpetual, non-exclusive easement in, through, over and across those portions of the Wilson Parcel as illustrated on Exhibit "B-1" (the "Easement"). Said Easement shall be used for vehicular and pedestrian ingress and egress, and Wilson shall not permit such area to be used for parking or in any other manner block such access between the Wilson Parcel and the Speedway Parcel.
>
> 2. MAINTENANCE. Speedway shall be responsible for the periodic repair of *damages to said Easement area caused by vehicular traffic (i.e., potholes)*.

*Id.* at 14 (emphasis added).

[5] In April 2017, Wilson filed a small claims action against Speedway for maintenance of the parking lot. The trial court held a hearing, at which Wilson

argued that all the parking lines within Speedway's easement needed to be repainted, and that pursuant to the Easement Agreement, Speedway was obligated to repaint the lines. Speedway contended that pursuant to the plain and ordinary meaning of "i.e." in paragraph 2 of the Easement Agreement, the "damages" it was obligated to repair meant "potholes." The trial court concluded that the "damages" in paragraph 2 were not limited to potholes, but that potholes were only one example of damages. Tr. at 19, 21. The trial court interpreted the Easement Agreement such that if parking lines were worn down by vehicular traffic, then Speedway was obligated to repaint them. *Id*. at 19. However, the trial court concluded that only one line needed to be repainted at that time, ordered the parties to split the cost equally, and issued a judgment awarding no damages. *Id*. at 22-23. This appeal ensued.

## Discussion and Decision

[6] We begin by noting that Wilson did not file an appellee's brief. When an appellee does not submit a brief on appeal, we need not undertake the burden of developing an argument on his behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse if the appellant's brief establishes a case of prima facie error. *Id*. Prima facie error in this context is error "at first sight, on first appearance, or on the face of it." *Id*. If the appellant is unable to meet this burden, we will affirm. *Id*.

[7] Speedway argues that the trial court erred in interpreting the Easement Agreement. Interpretation of a written contract is a pure question of law, which

we review de novo. *Tr. No. 6011, Lake Cty. Tr. Co. v. Heil's Haven Condos. Homeowners Ass'n*, 967 N.E.2d 6, 15 (Ind. Ct. App. 2012), *trans. denied*. The goal of contract interpretation is to determine the intent of the parties when they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument. *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009), *trans. denied* (2010). Also, if the instrument's "terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning." *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). "'The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts.'" *Trustcorp Mortg. Co. v. Metro Mortg. Co.*, 867 N.E.2d 203, 212 (Ind. Ct. App. 2007) (quoting *Whitaker v. Brunner*, 814 N.E.2d 288, 293 (Ind. Ct. App. 2004), *trans. denied* (2005)). "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Rogers v. Lockard*, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). "A contract is not ambiguous merely because the parties disagree as to its proper construction." *Bd. of Comm'rs of Delaware Cty. v. Evans*, 979 N.E.2d 1042, 1046 (Ind. Ct. App. 2012).

[8] Here, the crux of Speedway's appeal is the meaning of "i.e." in paragraph 2, which provides that "Speedway shall be responsible for the periodic repair of damages to said Easement area caused by vehicular traffic (i.e., potholes)." Specifically, Speedway asserts that in concluding that potholes were merely one example of damages caused by vehicular traffic that it was required to repair,

the trial court failed to apply the clear and ordinary meaning of "i.e." We agree.

[9] The term "i.e." is an abbreviation for the Latin "id est", which means "that is"; "It introduces a rewording or a clarification of a statement that has just been made or of a word that has just been used." MERRIAM-WEBSTER DICTIONARY (editor's note), https://www.merriam-webster.com/dictionary/i.e. (last visited Mar. 22, 2018). It is often confused with "e.g.," which stands for "exempli gratia" in Latin and means "for example"; "It introduces one or more examples that illustrate something stated." *Id.* To demonstrate the difference, we observe that "i.e." is used in the following manner: "the federal government's highest judicial body, i.e., the Supreme Court." BLACK'S LAW DICTIONARY (10th ed. 2014). Whereas, "e.g." is used as follows: "an intentional tort, e.g., battery or false imprisonment." *Id.*

[10] To understand the plain and ordinary meaning of "i.e.," it may be helpful to substitute "that is" for "i.e." in paragraph 2, which would then read, "Speedway shall be responsible for the periodic repair of damages to said Easement area caused by vehicular traffic (that is, potholes)." We conclude that the accepted definition of "i.e." indicates unambiguously that "potholes" is a clarification of "damages caused by vehicular traffic," and that paragraph 2 obligates Speedway to repair potholes. Accordingly, the trial court erred in interpreting the Easement Agreement by finding that potholes was merely one example of damages that Speedway was obligated to repair. Therefore, we reverse the trial court's order.

Reversed.

Vaidik, C.J., and Barnes, J., concur.